**Roxanna R. CLARK, Appellant,**

v.

**KANSAS CITY AREA TRANSPORTATION AUTHORITY and Henry M. Settles, Respondents.**

**No. WD34466.**

Missouri Court of Appeals,
Western District.

May 15, 1984.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied July 3, 1984.

Elwyn L. Cady, Jr., Independence, for appellant.

Richard N. Ward, City Atty., and Jeffrey L. Hess, Asst. City Atty., Kansas City, for respondents.

Before SOMERVILLE, P.J., and CLARK and BERREY, JJ.

BERREY, Judge.

This is an appeal by plaintiff, Roxanna R. Clark, from a jury verdict in her favor for the sum of $650.00. She alleges the trial court erred (1) in failing to give a future damage instruction, (2) prohibiting the argument of pain and suffering on the basis of scar tissue, (3) sustaining the objection to plaintiff's suggested range of pecuniary recovery during closing argument and (4) abusing its discretion in overruling the motion for new trial on the issue of damages.

Judgment affirmed.

Plaintiff was operating her motor vehicle northbound on Broadway in Kansas City,

Missouri. The traffic light was red at the 39th street intersection and she began braking, "getting ready to slow down and stop." The light turned green, she took her foot off the brake and accelerated through the intersection. Her next remembrance was "I was in an ambulance."

She was taken to St. Mary's Hospital, where she was examined and released. X-rays were taken and she was given some medication with instructions to see a physician on Monday.

The city admitted that she was struck by a Kansas City Area Transportation Authority (hereinafter ATA) bus being operated in the usual course of business.

She consulted her own physician, Dr. Antonio R. Lulo, on Monday and told him of the accident. He felt her neck and back and gave her pain pills, told her not to lift anything and to come back for treatment to her neck.

She went daily for treatments of hot packs and a vibrating machine applied to her back. Her testimony is devoid of how many days, weeks or months she was treated. She thinks she lost a week's time from work at Burstein-Appleby. For a week or two after returning to work she would leave early to receive her daily treatments. She took medication as prescribed and aspirin. She also claimed psychological damage by way of now being afraid of ATA buses! She is unable to drive through the intersection of 39th and Broadway and seeks alternative routes. Plaintiff, however, did not adduce evidence at trial that she consulted a psychiatrist or psychologist regarding her complaint.

As a result of the injuries she was forced to have a baby-sitter care for her child "around the clock" for one and a half or two weeks after the accident. Her ability to clean house was limited as was her ability to engage in recreational pursuits.

At trial, portions of the deposition of Dr. Lulo were read into evidence. When asked to define trauma he responded "I don't know, trauma is trauma." She had tenderness and spasm of the left trapezius mus-cle, tenderness of the left iliac and left hip. She suffered a "pain in the neck" and pain in left and right rib cage. She also complained of pain in the sacroiliac. She was given Parafon forte and later Robaxine, muscle relaxants, physical therapy with hot packs, a Sonolator treatment, and electrical impulses to relax the muscles.

The doctor opined that such injuries would not have any residual effect that would cause pain two or three years later. "I don't rule out the possibility of permanent pain as a result of it but I say probabilities are that she should not have pain."

From the record we do not know the amount of lost wages or baby-sitting charges. The parties stipulated that ambulance charges, x-rays, physician fees and drugs totaled $649.76.

The plaintiff failed to request a specific monetary amount for her injuries until the last half of her closing argument. Defendant objected to introduction of a sum certain at that late date and the objection was sustained.

Plaintiff alleges the trial court erred in not giving an instruction covering future damages. Her testimony was insufficient to establish future damages. We have a record without dates and without specifics. To illustrate the point the following is verbatim from the transcript:

Q. Do you remember the last time that you were in the doctor's office there, was it Dr. Beechie (sic), Beecher (sic)?

A. I don't remember his name; it was a different doctor than Dr. Lulo. He gave me some different medication because I was still having some pain; and he told me that if this medication didn't help, to be sure and come back and see him.

Q. Did the medication help you?

A. Yes; it did.

Q. Okay. From that time, now, has there been some problem in regard to these areas that you were feeling pain at that time to require you to continue to use that medicine at any time?

A. Well, I don't have the medication any more; I used all of it. But there are times that my back hurts and my neck hurts; but usually I just take a couple of aspirin.

Q. That was one of the prescription, was it not—

A. Yes.

Q. —or his recommendation, you could get that over-the-counter?

A. Yes.

Q. He told you to take aspirin, did he not, the last time?

A. Yes; he did.

Q. And you have taken aspirin, from that time, occasionally until the present day; is that true?

A. Yes; I have.

Q. Now, let me ask you, going back to the time, as I recall, the first time you really 'knew anything was when you were in the ambulance; is that right?

A. (Indicating).

Q. Did you have some sensation that you had been unconscious for a period?

A. I assumed that I had; I know I woke up with a terrible headache. And the man, when I asked him where I was, he told me I was in an ambulance and he told me I had been in an accident; and I—

Q. Okay. Did you—no; go ahead.

A. I don't remember anything prior to that.

Q. All right. Did you at that time have some inner-psychological disturbance of any kind?

A. I'm not for sure.

Q. Well, about pain, you had some pain; you told us about pain; right?

A. Yes.

Q. And did you have some psychological upset regarding the collision and buses? Did you have anything approaching a nightmare, for example, in your sleep?

A. Afterwards?

Q. Yes.

A. Oh, yes.

Q. Would you just, as nearly as you can, tell us in your own words what has that amounted to; what have you felt and how have you reacted?

A. Well, it's like whenever I come to an intersection, even though the light is green, I look for buses. If I see a bus, I steer away from them, because I'm scared to death of them. I can't drive through 39th and Broadway; I always find an alternate route around that intersection. I guess I'm just paranoid when it comes to seeing a bus on the street.

■ Mrs. Clark's testimony is so devoid of evidence that would establish future pain and its permanency that *Jones v. Allen,* 473 S.W.2d 763, 766 (Mo.App.1971), is not applicable. Hence, the court did not err in failing to give plaintiff's requested future damage instruction.

In point II Mrs. Clark alleges that the trial court erred in prohibiting her from arguing pain and suffering on the basis of scar tissue and Dr. Lulo's unopposed testimony properly established the predicate for argument by inference.

■ According to *Lewis v. Bucyrus-Erie, Inc.,* 622 S.W.2d 920, 926 (Mo. banc 1981), counsel should be accorded wide latitude in arguing facts and drawing inferences from the evidence. The argument cannot, however, be made of whole cloth, it must bear scrutinization and be based on the actual record. Nowhere is there evidence from plaintiff that she sustained scar tissue. Her treating physician, Dr. Lulo, testified:

I don't have any way to look inside her joints and determine that there was a torn ligament or not. If there is a ruptured ligament or a ruptured muscle, then they'll leave scar tissue. It most likely will give you some discomfort in the future, but in order to do that, the injury should be the result of a more strenuous accident maybe, I don't know. It's a hard question.

QUESTION: It's hard because you can't look in there and see the scar tissue, is that right?

ANSWER: That's right. You cannot look inside of there and say, yes, here it is. When you have a broken bone, you see the broken bone. If you have a ligament that might be torn, partially torn, completely torn, or if you have evidence of bleeding with hematoma and all of that, you don't know that that happened and we, of course, did not have that problem in this particular case.

This testimony does not even remotely indicate that plaintiff in fact sustained scar tissue. "The trial court is possessed of broad discretion in the area of closing arguments, not lightly to be disturbed on appeal...." *Lewis v. Bucyrus-Erie, Inc.*, *supra*, at 926.

■ The trial court properly rejected plaintiff's argument herein as there was no evidence to support the scar tissue theory.

Point III of appellant's list of complaints is directed at the trial court's refusal to permit appellant to argue a dollar amount for damages when she had not argued such in the initial part of her closing argument [the defendants did not comment on a dollar figure in their argument].

■ That plaintiff herein failed to request a specific sum or suggest a dollar amount in her initial closing argument is not in dispute. The defendant likewise did not comment on a dollar and cents figure. Plaintiff may not, therefore, in the final portion of closing argument inject an amount into the case when defense counsel made no argument as to amount. *Goldstein v. Fendelman*, 336 S.W.2d 661, 667 (Mo.1960); *Votrain v. Illinois*, 268 S.W.2d 838, 844 (Mo. banc 1954).

Appellant cites *Shaw v. Terminal, Railroad Ass'n of St. Louis*, 344 S.W.2d 32, 37 (Mo.1961), as authority for mentioning dollar and cents for the first time in the final portion of plaintiff's closing argument. Appellant has misread the case. In *Shaw*, *supra*, plaintiff failed to mention a monetary sum during the initial portion of closing argument and at the close thereof defendant called the court's attention to this omission and objected to plaintiff attempt-

ing to interject it in the final portion of his closing argument. The trial court overruled the objection, and defendant in his argument did not touch upon injury or damages so as to waive the point. The plaintiff's final argument involved lost wages, medical expenses, pain and suffering, etc., and requested a $25,000 verdict.

The court in *Shaw* stated:

It is not practicable to lay down a hard and fast rule governing all cases, ... But we do hold, ... that the party having the affirmative of the issues in a suit such as this may not, after full notice and warning, withhold all argument on vital question of injuries and damages; *we further hold that the trial court abused its discretion in permitting this argument in reply*, and that, under the circumstances of this case, the error was prejudicial ... (emphasis added)

Therefore, the trial court did not err in denying plaintiff's request to argue amount in the final portion of plaintiff's closing argument.

In order to grasp appellant's final theory it is necessary to quote point IV in toto:

The Court erred in abusing discretion in overruling the motion for new trial on the issue of damages alone in its submission that the quantum of damages awarded Mrs. Clark was grossly inadequate because the sum of $650 is not responsive to the evidence and community standards in that the evidence shows at the least 3½ years of pain, suffering, and mental anguish following impact injury to the person of Mrs. Clark and under judicial notice the court here can and should take judicial notice that the minimum award for mere presence at the Hyatt tragedy scene without any impact was $1,000.

Such a novel argument!

In *Stahlheber v. American Cyanamid Company*, 451 S.W.2d 48, 63–64 (Mo.1970), the Supreme Court noted:

Generally, the appellate court does not weigh the evidence, but considers only whether the trial court abused its discre-

tion in denying a new trial on the grounds of the inadequacy of the verdict. Determination of this question depends primarily upon whether the verdict is responsive to the evidence on the question of damages. *Nichols v. Blake,* Mo. Sup., 395 S.W.2d 136, 141[4, 5]. Also to be kept in mind is the rule that, even though plaintiff's evidence on his pecuniary loss is uncontroverted, the weight and sufficiency of the evidence is a matter for the jury, particularly on the issue of damages. *Spica v. McDonald,* Mo. Sup., 334 S.W.2d 365, 368[1].

■ Whether or not the jury verdict is against the weight of the evidence is a question for the trial court alone. *Neavill v. Klemp,* 427 S.W.2d 446, 450 (Mo.1968), citing *Wilcox v. Coons,* 362 Mo. 381, 241 S.W.2d 907, 917 (Mo.Banc 1951).

■ The jury in *Beste v. Tadlock,* 565 S.W.2d 789, 792 (Mo.App.1978), awarded plaintiff $1,000 for personal injuries, mild neck strain and mild low back pain, sustained when his vehicle was rear ended while he was stopped at an intersection waiting to turn left. He saw his doctor over a six-month span of time commencing with the date of the accident and he complained of headache and backaches. "The jury could reasonably have found plaintiff's injuries were neither serious nor permanent. The trial court did not err in declining to grant a new trial for inadequate damages." *Id.* Nor did the trial court err in the instant case.

Regarding her alleged psychological problems the court in *Dora Fisher v. Famous-Barr Company,* 618 S.W.2d 446, 449 (Mo.App.1981), stated:

> However, the issue of whether the incident did in fact set psychological forces in motion which caused plaintiff's ailments is a complicated question well suited for persons learned in the science of medicine. *Wilhelm v. State Traffic Safety Commission,* 230 Md. 91, 185 A.2d 715, 719 (1962). The trial court, by allowing 'a jury of laymen, unskilled in medical testimony on the subject ... permit[ted] the rankest kind of guesswork,

speculation and conjecture.' *Harrison v. Weller,* 423 S.W.2d [226] at 231. Thus, the trial court properly exercised its discretion by granting a new trial.

Fortunately, in the instant case, the trial judge was well aware of the pitfalls on the road the appellant urged him to travel and he quite properly avoided them.

Judgment affirmed.

All concur.