Sandra Sue WHEELER,
Plaintiff-Appellant,

v.

Ralph P. EVANS,
Defendant-Respondent.

No. WD 36717.

Missouri Court of Appeals,
Western District.

Feb. 4, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 27, 1986.

Application to Transfer Denied May 13, 1986.

Roger G. Brown, Jefferson City, for appellant.

Kelly Pool, Jefferson City, for respondent.

Before SOMERVILLE, P.J., and PRITCHARD and BERREY, JJ.

BERREY, Judge.

Plaintiff below, appellant herein, appeals a jury verdict in her favor. The jury found total damages of $8,572.75; however, the jury found plaintiff to be thirty-nine percent at fault thus reducing plaintiff's damage award to $5,229.38. Plaintiff alleges four points of error. This court affirms.

On the evening of March 2, 1981, plaintiff was at home watching television with her family when she received a telephone call from a friend who needed a ride home from the Wal-Mart store where she worked. Proceeding west on Missouri Boulevard in a 1972 Dodge Charger, plaintiff prepared to make a left hand turn in the first entrance to the Wal-Mart parking lot when she was struck from behind by the defendant.

At this particular point on Missouri Boulevard, there are five separate lanes of traffic: two east bound lanes, two west bound lanes and a center left turn lane. Plaintiff testified she was entirely in the center left turn lane with her turn signal on as she waited for oncoming traffic to pass before completing her turn. Mr. Evans, the defendant, testified he did not see a turn signal flashing on plaintiff's car. He stated that he rear-ended plaintiff's car while he was still in the second west bound lane of traffic. He testified he was traveling thirty to thirty-five miles per hour and did not see plaintiff's car until he was perhaps fifty feet away from it. At that point he stated he slammed on his brakes; evidence revealed forty-five feet of skid marks in the second west bound lane.

Plaintiff testified she did not see defendant prior to the collision. She stated she had no recollection of the actual impact or collision. She stated she was knocked across the double lane of east bound traffic and that the front wheels of her car were over the curb of the west side of the entrance way. After the accident, plaintiff

stated she was confused and backed up her car to the center lane to avoid tying up traffic.

Mrs. Wheeler stated that as Mr. Evans approached her car after the collision he seemed a "little wobbly," "his words and voice were slurred," and that he appeared to be intoxicated. She testified that she "smelled the alcohol on his breath."

Defendant testified he had been at a nearby bar with business associates and had had more than one beer. He stated that he did not feel dizzy or that his ability to operate a car was impaired. After the accident defendant was given a breathalyzer test which registered a blood alcohol content of .12 percent. A blood alcohol content of .10 percent is presumptively intoxicated. *See* § 577.037.1, RSMo (Supp. 1984). The defendant later pled guilty to the municipal charge of driving with excessive blood alcohol content.

Plaintiff was transported to Memorial Hospital by ambulance subsequent to the accident. She was examined and released. Plaintiff's family doctor gave her muscle relaxers and pain pills and prescribed physical therapy.

A week to ten days following the accident, plaintiff testified she suffered from headaches, pain in her neck, back, shoulders, arms, right leg and hip and experienced numbness in her arms, fingers and toes.

The results from plaintiff's CAT scan, myelogram and x-rays performed by Dr. Curtis Cox, a neurologist, were all normal. Dr. Cox ordered no activities for three months and then referred her to Dr. John Hart, an osteopath, for physical therapy. She underwent physical therapy with Dr. Hart for four to six weeks.

Because plaintiff was not satisfied with the results of the physical therapy, Mrs. Wheeler sought the services of a chiropractor, Dr. Janice Sines, who was referred by plaintiff's attorney. She stated she receives temporary relief from Dr. Sines.

As a result of plaintiff's symptomatologies, she testified that she could not actively pursue her housework; that her work as a waitress has been impeded as she does not move as quickly and cannot carry the heavy loads; and that her general movement is limited and painful. She testified that she is unable to engage in many recreational activities she once enjoyed and that she is unable to have sexual relations with her husband except possibly once every six months.

Additional medical evidence presented by plaintiff included testimony by Dr. Anasseril E. Daniel, a psychiatrist. Dr. Daniel stated that after three examinations he thought plaintiff suffered from post traumatic stress disorder as a result of the car accident.

Plaintiff claimed she incurred $6,528.30 in medical expenses, of which over half of these expenses were for her chiropractic care. She asserts lost wages in the amount of $2,352.45.

## I

In appellant's first point of error, she alleges the trial court erred in its refusal to submit the punitive or exemplary damage instruction, MAI 10.02. Specifically, appellant asserts that by Mr. Evan's driving after he had consumed a quantity of alcohol which is in excess of the legal limit, his action constituted a conscious disregard for the safety of others and warrants the submission of punitive damages. Based on the facts in this case, this court rejects appellant's contention.

Punitive damage instruction may be submitted where the evidence reveals that the act in question has been intentionally done without just cause or excuse. *Pollock v. Brown,* 569 S.W.2d 724, 733 (Mo. banc 1978). This court has said that "[t]he wrongful act or conduct must be accompanied by aggravating circumstances, so that the wrongdoer must know that when he commits the act that it is wrongful, or that there must be such recklessness that conscious wrongdoing is necessarily implied." *Asher v. Broadway-Valentine Center,* 691 S.W.2d 478, 485 (Mo.App.1985).

In its most recent pronouncement, the Supreme Court reiterated "that punitive damages can be awarded in a negligence action but only when the defendant knew or had reason to know that there was a *high degree of probability* that the action would result in injury." *Hoover's Dairy Inc. v. Mid-American Dairymen,* 700 S.W.2d 426 (Mo. banc 1985).

Cases from other jurisdictions note that as a person becomes more intoxicated his ability to retain the necessary scienter lessens and thus he cannot be held liable for punitive damages. *Baker v. Marcus,* 201 Va. 905, 114 S.E.2d 617 (1960); *Madison v. Wigal,* 18 Ill.App.2d 564, 153 N.E.2d 90 (1958); *Brake v. Harper,* 8 N.C.App. 327, 174 S.E.2d 74 (1970). In those jurisdictions, however, the defendant's state of mind is viewed separately and apart from his conduct. *Id.* This is contrary to the law of Missouri in which the defendant's conscious wrongdoing may be "necessarily implied" from his reckless conduct. *Asher, supra,* at 485. Although getting behind the wheel with a blood alcohol content above the legal limit is conduct which becomes negligence *per se, Bowman v. Heffron,* 318 S.W.2d 269, 274 (Mo.1958), this *fact* does not *by itself* establish it as the sole proximate cause of the injury which is needed for the submission of the punitive damage instruction.

It has been noted that a person cannot be punished solely because he was drunk or is an alcoholic. *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.E.2d 758 (1962). The Supreme Court in Arizona recognized that intoxication cannot be equated with liability for punitive damages. It stated:

The law of torts does not permit such a sweeping inference; it eliminates the necessity of showing proximate cause and makes a driver, who has had some alcoholic beverage previous to driving, an insurer in strict liability for punitive damages, whether or not the consumption of alcohol has anything whatever to do with a subsequent accident.

*Smith v. Chapman,* 115 Ariz. 211, 564 P.2d 900, 903 (1977).

Determining whether defendant's conduct is the proximate cause of plaintiff's injuries is usually left for the jury. *Kinealy v. Southwestern Bell Telephone Co.,* 368 S.W.2d 400, 402 (Mo.1963). The causal connection may be proven through circumstantial evidence if the facts proved are so connected that its existence may be reasonably inferred. *George v. Howard Construction Co.,* 604 S.W.2d 685, 692 (Mo. App.1980). Yet, where the evidence which links defendant's conduct to the plaintiff's injury is based on speculation and conjecture, plaintiff has not met all the elements for submission.[1] *Id.* at 692.

The evidence in this case did reveal that defendant had a blood alcohol content of .12 percent. Plaintiff did not present additional evidence that defendant's intoxication caused him to rear-end the plaintiff's car.[2] In an excellent article on the subject of punitive damages and drunk driving, the author noted:

It would be possible for a drunken driver to commit a negligent act in such a manner as not to indicate intoxication. For example a drunken driver could be well within the speed limit, drive a straight line and have a rear-end collision with a

---

**1.** Appellant asserts the submission of the punitive damage instruction is a logical extension of *Smith v. Sayles,* 637 S.W.2d 714, 718–719 (Mo. App.1982), in which this court remanded for retrial the issue of punitive damage where there was evidence of intoxication of a defendant-driver who had taken default nihil dicit. This court notes that the *Sayles* court believed the plaintiff must have prima facie proof to warrant the submission of punitive damages. This naturally includes the element of causation. Unlike Mrs. Wheeler who presented evidence but failed to meet her prima facie burden, plaintiff Smith

never got his chance to present evidence to warrant a punitive damage award.

**2.** In most cases, the injuries sustained in an automobile collision with a drunken driver would be directly attributable to the defendant's intoxication. Intoxication causes reduced awareness and impairs the ability of a driver to react to a particular situation. The facts in the instant case, however, did *not* establish the driver would have reacted any differently if he had not been drinking. *See* Punitive Damages and the Drunken Driver, *infra.*

car stopped at an intersection. Rear-end collisions are very common and are mostly due to inattention, not intoxication. In such an instance, it is extremely unlikely one could get punitive damages and it is arguable that one should not.

Punitive Damages and the Drunken Driver, 8 Pepperdine L.Rev. 117, n. 102 at 133–134. *See Detling v. Chockley*, 70 Ohio St.2d 134, 436 N.E.2d 208, 212 (1982).

■ This court believes the facts in this case fall into the *very narrow rear-end exception* as noted above. The plaintiff urges that the instant fact pattern is similar to that in *Rustin v. Cook*, 143 Ariz. 486, 694 P.2d 316 (Az.App.1984), in which the Arizona appellate court stated evidence of driving while intoxicated "supports a finding of acting with reckless indifference to the rights of others." As to the pertinent facts in the *Rustin* case, the court stated, "At the time the appellee's vehicle was stopped in *obedience* to a traffic signal. The appellant had been drinking from 6:00 p.m. to 10 p.m. and was intoxicated. The collision occurred shortly after 10:00 p.m." (Emphasis added). *Id.* 694 P.2d at 318. This case is distinguishable as the evidence in this case reveals plaintiff was not "obediantly" positioned to make the left turn into the Wal-Mart store. It appears in the *Rustin* case, unlike the case at bar, the plaintiff was free from negligence.

In summary, under the facts of this case and through the evidence presented, this court cannot hold defendant's conduct warranted the submission of punitive damages.

## II

■ Plaintiff argues MAI 4.01 fails to advise the jury that the judge will reduce the plaintiff's recovery by the percentage of fault it assesses to the plaintiff, therefore, it was trial court error to refuse plaintiff's proffered damage instruction:

### "INSTRUCTION NO. B

If you find in favor of plaintiff Sandra Wheeler, then you must award plaintiff Sandra Wheeler such sum as you believe will fairly and justly compensate plaintiff Sandra Wheeler for any damages you believe she sustained as a direct result of injury caused by the occurrence mentioned in the evidence.

In determining the total amount of damages sustained by plaintiff Sandra Wheeler, you must not reduce such damages by any percentage of fault you may assess to plaintiff Sandra Wheeler. The Court will compute plaintiff Sandra Wheeler's recovery by reducing the total amount of damages you find plaintiff Sandra Wheeler sustained by any percentage of fault you assess to plaintiff Sandra Wheeler."

Plaintiff argues that this instruction is necessary to explain how the court uses the jury's assessment of fault in awarding the amount of damages.

The lack of an explanation in the diminution of damages in the approved instruction 4.01 has not resulted in prejudicial error. The verdict form A as submitted discloses to the jury the court's role in determining the actual damages awarded to a plaintiff as laid out in the instruction offered by the appellant.

The verdict form A submitted to the jury in this case stated, in part:

We, the undersigned jurors, assess percentages of fault as follows:

| | |
|---|---|
| Defendant Ralph Evans | __% (zero to 100%) |
| Plaintiff Sandra Wheeler | __% (zero to 100%) |
| Total | __% (zero to 100%) |

We, the undersigned jurors, find the total amount of plaintiff Sandra Wheeler's damages, disregarding any fault on the part of plaintiff Sandra Wheeler, to be $_____ (stating the amount).

NOTE: The Court will reduce the total amount of plaintiff Sandra Wheeler's damages by any percentage of fault you assess to plaintiff Sandra Wheeler.

If MAI 4.01 standing alone, in anyway caused the jury to misunderstand the consequences of their findings, it was cured by the verdict form specifically stating the correct use of comparative fault.

## III

■ The appellant's third point error alleges trial court error in denying her mo-

tion for new trial on the grounds that the jury's damage award was less than undisputed actual damages and therefore grossly inadequate. Plaintiff's stipulated medical expenses were $6,528.30 and the evidence of lost wages amounted to $2,352.45 thus totaling $8,880.75 in special damages. The jury returned a verdict of $8,572.75.

This court's review is limited to the determination of "whether the trial court abused its discretion in overruling plaintiff's motion for new trial on the ground that the verdict was grossly and shockingly .inadequate." *Brown v. Moore*, 248 S.W.2d 553, 559 (Mo.1952). The amount of damages to be awarded is a question for the jury. The Supreme Court in *Brown* stated:

> The jury's broad discretion in fixing the amount of the award is conclusive on appeal, especially where the verdict has the approval of the trial court unless the appellate court can say that the verdict is so shockingly and grossly excessive or inadequate as to indicate that the amount of the verdict is due to passion and prejudice; and that the broad discretion granted to the jury and to the trial court in weighing the evidence has been arbitrarily exercised and abused.

*Id.* at 559.

In the case here on appeal, the damages awarded by the jury were not so grossly and shockingly inadequate as to indicate bias and prejudice. In the *Brown* facts, the jury made an award of $500 where uncontradicted evidence revealed property damage in the amount of $1,200 as well as· approximately $9,600 in lost wages and $490 in medical bills to date. Such disparity does not exist in this case.

Similarly, in *Clark v. Kansas City Area Transportation Authority*, 673 S.W.2d 55, 60 (Mo.App.1984), this court found a .damage award of $650 was not against the weight of the evidence and could have been reasonably found although the plaintiff alleged painful injuries and psychological trauma. The *Clark* court found the facts fell within the sphere of *Beste v. Tadlock*, 565 S.W.2d 789, 792 (Mo.App.1978), in which the court stated the reviewing court

does not intervene unless there has been an abuse of discretion. As in the *Beste* case, this court cannot find abuse in the instant case.

Plaintiff cites *Knothe v. Belcher*, 691 S.W.2d 297 (Mo.App.1985), in which this court found that the trial court abused its discretion in refusing plaintiff a new trial where the verdict was grossly and shockingly inadequate. In the *Knothe* case, the jury awarded $5,000 where undisputed special damages amounted to $5,647. Nothing was awarded for pain and suffering although the court found "there was a good deal of pain and discomfort associated with the injuries plaintiff [Knothe] received." *Id.* at 300.

The *Knothe* case is inapposite to the case at hand. The *Knothe* court specifically limited its review of the evidence of damages and of the amount awarded to determine if prejudicial error had resulted from defendant-juror misconduct. *Id.* at 300. In the instant case, plaintiff's motion for new trial was not based on this premise.

Because the verdict had approval of the trial court and as such is conclusive on appeal, *Parker v. Pine*, 617 S.W.2d 536, 541 (Mo.App.1981), this court will not interfere with the damage award. Although plaintiff asserted a medical bill of $3,500 for chiropractic care, plaintiff's treating physician as well as defendant's examining physician found no objective medical evidence of plaintiff's injuries. Therefore, there existed a reasonably rational basis for the jury's innocuous reduction from the asserted damages. *See, Parker, supra,* at 541.

## IV

■ Finally, appellant alleges trial court error in taking judicial notice of the stopping distance tables in the presence of the jury whereas the court took judicial notice of § 577.010.1 and § 577.037.1, the presumptive intoxication statutes, on the record but refused to do so in front of the jury. Assuming without deciding whether the trial court erred, this trial court action did not rise to the level of prejudicial error. First, the jury did receive evidence of de-

fendant's drinking and his conviction of driving with excessive blood alcohol content. The record, in part, states:

> THE COURT: And that is stipulated by the parties, ladies and gentlemen, that the breathalyzer test was .12 of one percent.
>
> Q. [by Mr. Neff] And, Mr. Evans, did you subsequently plead guilty to a charge of driving with excessive blood alcohol content as a result of the collision?
>
> A. Yes, I did.
>
> Q. All right. Was that in the Jefferson City Municipal Court?
>
> A. Yes.

Secondly, as respondent observed, the only purpose of apprising the jury of the statute setting forth the blood alcohol content level needed to be presumptively intoxicated is "to afford the jury a basis for returning a verdict in favor of the plaintiff." Here, the jury did so and plaintiff was not thereby prejudiced.

Judgment affirmed.

All concur.