Zita and Alexander STOJKOVIC,
Plaintiffs–Appellants,

v.

Thomas WELLER and Allstate Insur-
ance Co., Defendants–Respondents.

No. 72791.

Supreme Court of Missouri,
En Banc.

Jan. 9, 1991.

Rehearing Denied Feb. 7, 1991.

Michael A. Gerritzen, St. Louis, for plaintiffs-appellants.

Samuel T. Vandover, John B. Singleton, Timothy H. Battern, St. Louis, for defendants-respondents.

RENDLEN, Judge.

In this personal injury action arising from an automobile collision, plaintiffs appeal contending the trial court erred in granting a directed verdict for defendants on the issue of punitive damages and that other trial errors diminished plaintiffs' awards of actual damages. Transfer was granted, Mo. Const. art. V, § 10, and the cause is determined as though on original appeal. We affirm in part and reverse and remand in part.

The collision occurred about 9:00 p.m. on February 14, 1986, as Alexander Stojkovic, accompanied by his wife, drove east on Kennerly Road in St. Louis County. They stopped at a red light where Kennerly crosses Tesson Ferry Road, and when the light changed, proceeded through the intersection. Another car following plaintiff east on Kennerly was about three feet into the intersection when defendant Weller, coming from the south, ran the red light. A third car driven by John Geskermann westbound on Kennerly had proceeded about one-quarter of a car length into the intersection, preparing for a left turn onto Tesson Ferry when Weller drove into this busy intersection, striking the rear of plaintiffs' automobile, which was more than halfway across Tesson Ferry. The offending vehicle did not stop but continued north past Geskermann, who was waiting to make his left turn. Geskermann observed these things and noted that defendant, after striking plaintiffs, braked momentarily and swerved to the right as if to pull off the road but then continued north. Realizing that defendant was leaving the scene, Geskermann turned right in pursuit and followed until he was able to get the license number of defendant's car. He returned and reported the number and description of the car to police officer Christopher Stocker, who had arrived and was working the accident.

Mrs. Stojkovic, treated for neck and back injuries that required physical therapy following the collision, brought suit against Weller for actual and punitive damages and against Allstate Insurance (Weller had no liability coverage) for actual damages pursuant to the uninsured motorist provision of her insurance policy. Her husband sought actual damages for loss of consortium from both defendants and punitive damages from Weller. At the close of plaintiffs' case a directed verdict was entered against plaintiffs on the issue of punitive damages but the jury awarded Mrs. Stojkovic $5000 for her injuries and Mr. Stojkovic $1000 for loss of consortium.

A central question is the admissibility of evidence of Weller's intoxication and whether that element, coupled with other evidence of defendant's misconduct, supported submission of the issue of punitive damages. We find the evidence of intoxication, as well as evidence of Weller's conduct following the collision, was erroneous-

ly excluded and the trial court mistakenly directed a verdict on the issue of punitive damages.

Even before trial, the judge sustained defendants' pre-trial motions in limine and announced that any evidence of Weller's intoxication, his consumption of alcohol, or his driving after the accident would not be admitted. In sum, the trial court repeatedly displayed a predisposition to disallow punitive damages by orally instructing the array to disregard plaintiffs' questions concerning punitive damages during voir dire, by excluding evidence of intoxication, by refusing to submit plaintiffs' proffered instructions on punitive damages, and by directing a verdict for Weller on that issue at the close of plaintiffs' case.

The following testimony was submitted in offers of proof pertinent to these issues:

*John Geskermann:* [1] Mr. Geskermann stated that after Weller ignored the red light at Kennerly Road, he ran four subsequent red lights and exceeded Geskermann's speed of fifty-five miles per hour while the posted speed limit was forty-five miles per hour. Geskermann saw Weller weave in and out of traffic, collide with yet another vehicle, and finally slump over his wheel when he came to a stop.

*Johna Pirtle:* Ms. Pirtle was the manager of the Soccerhaus Banquet Center, where Weller arrived at approximately 9:20 after the accident (the collision occurred at 9:00 p.m.). She testified that in her business she had served food and alcohol for ten years and in her opinion Weller was "very drunk," considering that he staggered up the steps, slurred his speech, slapped her son on the head, and slammed his girlfriend against a cigarette machine. Pirtle attempted to bar Weller from the building because she believed he was clearly drunk, but she was forced to call the police to remove him from the property. She further noted that Weller grabbed a beer and drank a small amount.

*Officer Christopher Stocker:* Officer Stocker testified that after stopping at the scene of the accident he arrived at the Soccerhaus at 9:38. He found Weller there and noted many indicators of his insobriety, such as watery red eyes, slurred speech, dramatic mood swings, and difficulty in walking. Further, the odor of alcohol, which was "very strong, completely permeated the air of the interior of the car." However, he did not perform a blood alcohol test because he "did not have a witness [at that time] that could positively put Mr. Weller behind the steering wheel of a car," thus Weller was not arrested for driving while intoxicated.

This in part was the body of evidence improperly disallowed at trial.

■■■ Evidence of intoxication is relevant to the issue of negligence when presented in conjunction with evidence of erratic driving or other factors. *E.g., Doisy v. Edwards,* 398 S.W.2d 846 (Mo.1966). Beyond question defendant's driving was erratic or worse. Before he struck plaintiffs' automobile, defendant ran the electric stop signal and either did not see or ignored the plaintiffs' car in front of him when he sped into the intersection at 50 to 55 miles per hour. Weller admitted the intersection was visible, though "barely," from a "quarter mile away," but claimed he was unaware of the collision. The jury could have considered whether alcohol contributed to his unawareness or whether to believe him at all. This aberrant behavior continued unabated when defendant swerved to the right as if to pull off the road but then continued away from the scene of the accident at speeds in excess of fifty-five miles per hour, weaving in and out of traffic, striking another vehicle, and finally slumping over the wheel when his automobile came to a stop. Contrary to the erroneous ruling of the trial court, it is of no moment that part of this behavior occurred after the accident, for it was an intimate aspect of the continuum, involving action immediately before, during and closely following the collision. This action unfolded in a constant stream before the

---

1. Mr. Geskermann was on active duty in the military during trial and it was stipulated his deposition might be used. The facts contained in this offer of proof are found in that deposition.

witness Geskermann and the relevant conduct of Weller continued in the presence of witnesses Pirtle and Stocker. The jury should have been permitted to consider such evidence in connection with the issue of Weller's recklessness and condition of sobriety at the time of the accident. The true question was not admissibility but the weight to be afforded this testimony, and that was for the jury.

Punitive damages may be awarded in a negligence action if the defendant "showed complete indifference to or conscious disregard for the safety of others." *Menaugh v. Resler Optometry, Inc.*, 799 S.W.2d 71, 73 (Mo. banc 1990); MAI No. 10.02. This is so if the defendant "knew or had reason to know that there was a high degree of probability that the action would result in injury." *Hoover's Dairy, Inc. v. Mid–American Dairymen*, 700 S.W.2d 426, 436 (Mo. banc 1985). No decisions from our Court have addressed the issue of punitive damages in the case of a drunken driver, but in *Smith v. Sayles*, 637 S.W.2d 714 (Mo.App.1982), where the trial court assessed actual and punitive damages on a judgment *nihil dicit*, the court of appeals reversed and remanded for a new trial on both types of damages. In *Wheeler v. Evans*, 708 S.W.2d 677 (Mo.App.1986), the court of appeals affirmed the trial court's refusal to submit MAI 10.02 on punitive damages in spite of evidence that the defendant was a "little wobbly," "his words and voice were slurred," he had the smell of alcohol on his breath, and his blood alcohol content was .12 percent. There, though the plaintiff was stopped in a turn lane when her car was rear-ended by the defendant, the court felt the evidence failed to demonstrate a "conscious disregard for the safety of others" and was barely sufficient on the issue of negligence. However, to the extent that *Wheeler* may be construed as inconsistent with our decision today, it is not to be followed.

█ In the present case, there was evidence of erratic driving manifesting a reckless disregard of consequences exacerbated by intoxication. From this a jury could well have found that defendant "knew or had reason to know that there was a high degree of probability that the action would result in injury." *Hoover's Dairy*, 700 S.W.2d at 436. Defendant's conduct was sufficient to have submitted the issue and for the jury to have determined whether defendant "showed complete indifference to or a conscious disregard for the safety of others." Because evidence material to defendant's condition of intoxication should have been admitted for consideration as a causative factor, and because the trial court directed a verdict on the issue of punitive damages, the cause must be reversed.[2] It is important to recognize that the purpose of punitive damages to deter reckless conduct could hardly be better served than in alcohol-related driving cases. If an award of "smart money" can have a sobering effect on this defendant and others like him, its deterrent purpose will be realized.

Though the erroneously excluded evidence met the test for admissibility, the jury nevertheless found defendant negligent; however, plaintiffs contend that numerous other instances of trial error reduced the awards of actual damages.

█ The first of these points concerns the question asked of Mr. Stojkovic on cross examination whether he was injured in the accident. The court initially overruled plaintiffs' objection but then reversed its decision, denying plaintiffs' motion for a mistrial but orally instructing the jury to disregard the question and answer. This oral admonishment served as a withdrawal instruction, *Kirst v. Clarkson Construction Co.*, 395 S.W.2d 487, 499 (Mo.App. 1965), and the trial court did not abuse its discretion in choosing the lesser remedy.

█ The next question concerns the testimony of defendant Weller. Weller originally stated he did not realize he was in an accident, but later changed his story on the basis of his consideration of statements of others and admitted his vehicle

2. For a discussion of the law of various jurisdictions on the subject, see *Punitive Damages and the Drunken Driver,* 8 Pepperdine L.Rev. 117 (1980).

had indeed collided with the Stojkovics'. Plaintiffs asked upon what statements he relied to reach this conclusion, and the court sustained defendants' objection on grounds of attorney-client privilege. Whether or not this questionable ruling was erroneous, its prejudicial effect has not been shown. Next the court erroneously sustained defendants' objections to questions as to what, if anything, prevented Weller from knowing a collision occurred, and on retrial of the punitive damage issue this subject may be fully explored.

■■■ Plaintiffs also claim error in the trial court's restriction of cross examination intended to impeach Allstate's medical expert, Dr. Frederick, as to whether he testified only for defendants, whether he always concluded there was no injury and how he acquired his professional corporation. We find no error in these rulings. Plaintiffs contend further that the trial court improperly allowed defendant in final argument to suggest an adverse inference from plaintiffs' failure to call as a witness Dr. Singhal, who was Mrs. Stojkovic's first treating doctor. Even if error is assumed *arguendo*, the prejudicial effect thereof is within the discretion of the trial court, and there is no abuse of discretion here. *See Hoover's Dairy*, 700 S.W.2d at 434.

■■ Similarly, we have considered but reject plaintiffs' claim that the award of actual damages was so low it indicated the jury was biased and prejudiced. We are unable to conclude the awards were shockingly inadequate. ·

■■ Plaintiffs finally contend the trial judge erred in not disqualifying himself at plaintiffs' request because he had in effect become an advocate for the defense. Though we reverse the trial judge's ruling on punitive damages, we do not find his conduct rises to the level that we must declare he should have recused during trial.

The awards of actual damages are affirmed but the judgment as to punitive damages is reversed and the cause remanded for a new trial consistent with the views expressed herein.

BLACKMAR, C.J., HIGGINS, J., and MORGAN, Senior Judge, concur.

COVINGTON, J., concurs in result in separate opinion filed.

ROBERTSON and HOLSTEIN, JJ., concur and concur in concurring opinion of COVINGTON, J.

BILLINGS, J., not sitting.

COVINGTON, J., concurring in result.

In Missouri the law has been that in an action to recover damages for injuries sustained in a motor vehicle accident, evidence of intoxication of a party is admissible as a circumstance to be considered with other facts in evidence to determine the question of negligence. *Broderson v. Farthing*, 762 S.W.2d 548, 549 (Mo.App.1989). Evidence of the drinking of alcohol, however, as opposed to actual intoxication, is admissible only when coupled with evidence of erratic driving or some other circumstance from which it might be inferred that defendant's physical condition was impaired at the time of the collision. Before evidence of alcohol consumption becomes relevant, the other evidence must support an inference that the drinking caused the party to drive in an erratic manner and that the erratic driving caused the collision. The evidence must not include guess work, conjecture and speculation as to the existence of the necessary facts to make the conclusion. *Id.* Erratic driving involves something more than mere negligence. *Id.* at 551. It includes "abnormal, peculiar, unaccountable and aberrant operation of the vehicle." *Id.* "Erratic driving is not the product of carelessness or of inattention but is conduct so heedless of circumstances as to be attributable to some impairment of faculties or of function." *Id.* I concur with the principal opinion that the trial court abused its discretion in not admitting evidence of the drinking of alcohol. This conclusion is supported by the cases compiled in *Broderson v. Farthing*, 762 S.W.2d at 550–51.

The question of submissibility of punitive damages is a separate issue. Although not opposed to submission of punitive damages in cases involving intoxication, I am op-

posed to the submission of punitive damages without enunciation of the standards or principles upon which the evidence may be submitted to the jury. The principal opinion slides from its discussion of evidence of intoxication in connection with *Doisy v. Edwards*, 398 S.W.2d 846 (Mo. 1966), into a conclusion that the jury "should have been permitted to consider such evidence in connection with the issue of Weller's *recklessness*," (emphasis added) which the principal opinion appears to equate with Weller's "condition of sobriety at the time of the accident." The principal opinion fails to analyze the issue of punitive damages in the traditional analysis, nor does it pronounce that submission of punitive damages in alcohol-related cases requires a different analysis. If the principal opinion suggests that this Court should adopt a different standard for analysis of punitive damages in cases involving intoxication, the policy decision, though not inappropriate, should not be permitted to disregard completely the principles of law this Court has articulated in the area of punitive damages.

The most important consideration relative to the issue of punitive damages in a case involving a drunken driver is the defendant's state of mind at the time the tort is committed. The plaintiff must establish that a defendant motorist manifested a state of mind to justify imposition of punitive damages, while under the influence of alcohol. *See Punitive Damages and the Drunken Driver*, 8 Pepperdine L.Rev. 117 (1980). This is not a simple task. Although a majority of jurisdictions have indicated that recovery of punitive damages from an intoxicated driver may be allowed under certain circumstances, the cases differ as to whether intent or motive must be shown before punitive damages may be awarded. Some jurisdictions that approve assessment of punitive damages against drunken drivers emphasize the defendant's conduct and impute a state of mind consistent with that conduct. *See Miller v. Blanton*, 213 Ark 246, 210 S.W.2d 293 (1948). There the Supreme Court of Arkansas inferred a disregard for the safety of others from the fact that the defendant pleaded

guilty to the offense of reckless driving. In *Sebastian v. Wood*, 246 Iowa 94, 66 N.W.2d 841 (1954), the Iowa Supreme Court likewise rejected defendant's argument that malice was a necessary element and found "legal malice" from the wanton or willful misconduct of the defendant.

Nor may the plaintiff disregard causation. As *Broderson v. Farthing* indicates, it is necessary to strike a balance between evidence of consumption of alcohol and proof that such consumption had a marked effect in causing the accident. Both the defendant's motives and conduct in committing the tort are important as the basis of the award for punitive damages. The question, then, is whether this Court should hold that driving while under the influence of intoxicating liquors may, in certain circumstances, constitute "reckless indifference to the rights of others." *See Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo.banc.1989).

Authority from Pennsylvania provides guidance. The Superior Court of Pennsylvania, although permitting submission of punitive damages in some cases in which there is evidence of intoxication, properly recognized that, despite a defendant's intoxication, other circumstances would have to be present to warrant submission of the punitive damage issue to a jury. *Focht v. Rabada*, 217 Pa.Super. 35, 268 A.2d 157 (1970). Pennsylvania previously adopted the rule of punitive damages as set forth in § 908 of the Restatement of Torts and the comments thereunder. The Pennsylvania rule allows the awarding of punitive damages when the act is done with reckless indifference as well as with bad motive. Pennsylvania looked for definition of "reckless" under these circumstances to § 500 of the Restatement of Torts titled "Reckless Disregard of Safety". Comment (d) to that section states: "If the conduct involves a high degree of chance that serious harm will result, that fact, that he knows or has reason to know that others are within the range of its effect, is conclusive of his recklessness." Extending the definition of "reckless" previously established in other cases involving driving while intoxicated to

the question of punitive damages, the Pennsylvania Superior Court rejected defendant's contention that wrong motive must exist in all cases before punitive damages will be imposed:

> Automobiles represent the most lethal and deadly weapons today entrusted to our citizenry. When automobiles are driven by intoxicated drivers, the possibility of death and serious injury increases substantially. Every licensed driver is aware that driving while under the influence of intoxicating liquor presents a significant and very real danger to others in the area. Thus, we have no hesitancy in concluding that an intentional assault with fists may, in certain instances, constitute action less outrageous than attempting to drive while under the influence of intoxicating liquor which constitutes a threat to the life and safety of others....

*Focht*, 268 A.2d at 161.

Missouri has adopted the standard for punitive damages as set forth in § 908 of the Restatement of Torts and the comments thereunder in the case of a claim for actual damages based on intentional tort. "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others." Restatement (Second) of Torts, § 908(2) (1979); *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. banc 1989). Although the claim for actual damages in the present case is based on negligence, the standard set forth in § 908 of the Restatement is appropriate in cases involving the drunken driver, given the considerations relative to the defendant's state of mind at the time the tort is committed.

As a matter of policy, there is valid reason for this Court to adopt a rule that permits submission of punitive damages in cases in which there is evidence of intoxication together with other evidence indicating a reckless indifference to the interests of others. The evidence in this case shows that defendant was travelling in excess of the speed limit and ran a red light prior to striking plaintiffs' automobile. This evidence alone does not by necessity consti-

tute reckless indifference. The defendant, however, after slowing and pulling over as though to stop, quickly accelerated and continued on his way. The excluded testimony would have shown that defendant was moving from lane to lane and traveling well in excess of the speed limit, that he ran four other red lights, weaving through the parked vehicles, and that he slumped over the steering wheel when his automobile came to rest. The excluded testimony would have also shown that defendant apparently struck a second automobile and left the scene of that accident. In totality, the evidence indicates reckless indifference to the rights of others and would require submission of the question of punitive damages to the jury. On these bases, I concur in result with the principal opinion.