**Bradley STUART, Appellant,**

v.

**Frank David MILLS, Respondent.**

No. 19753.

Missouri Court of Appeals,
Southern District,
Division Two.

May 31, 1995.

John C. Banning, Fitzsimmons, Schroeder, Nelson & Reynolds, P.C., Springfield, for appellant.

John G. Schultz, John L. Mullen, Franke & Schultz, P.C., Kansas City, for respondent.

CROW, Judge.

On March 5, 1990, an automobile driven by Defendant, Frank David Mills, struck a two-ton wrecker driven by Plaintiff, Bradley Stuart, on Highway 160 in Taney County.

Plaintiff filed a two-count petition against Defendant. Count I sought damages for bodily injuries allegedly sustained by Plaintiff in the collision. Count II sought punitive damages, averring Defendant operated the automobile in conscious disregard for the safety of Plaintiff and others similarly situated.

The case was tried to a jury. At the close of Plaintiff's evidence, the trial court granted a motion by Defendant for a directed verdict on Count II. The jury returned a verdict for Plaintiff on Count I, assessing his damages at $8,000.[1] The trial court entered judgment per the verdict.

Plaintiff appeals. The first of his three points relied on assigns error in the trial court's exclusion of testimony by a physician that Plaintiff's "impairment is 13 percent for the body as a whole." The third point asserts the trial court erred in granting the directed verdict on Count II. The second point maintains the trial court wrongly excluded evidence pertinent to Count II. Inasmuch as the second and third points are related, we address them first.

The surface of Highway 160 at the collision site is asphalt. The collision occurred on an "S curve."

Plaintiff testified he had turned right and "was probably running 25, 30 miles an hour coming around that corner" when he saw a "red blur." He realized it was an automobile which was "going too fast for the corner."

Plaintiff "locked up" his brakes. He saw the nose of the automobile go down, indicating its driver had "hit the brakes." The rear of the automobile slid to the driver's left and into Plaintiff's lane, striking Plaintiff's wrecker.

Plaintiff avowed he was "completely stopped" when the impact occurred. The force moved the wrecker approximately six inches.

Plaintiff exited the wrecker and went to the automobile. Defendant was its driver. Defendant's head was bleeding.

Trooper Ed Lugenbell of the Missouri State Highway Patrol arrived at the scene to investigate. At trial,[2] he did not recall talking to Defendant. However, we infer from his testimony that his report shows he did talk to Defendant. Apparently, the conversation occurred at a hospital.

Lugenbell's report indicates Defendant said: "I don't remember being in the accident. I guess I passed out." Asked if Defendant revealed whether he passed out before or after the impact, Lugenbell responded, "I don't think he said, and I don't remember."

---

1. Although the instructions are not in the legal file, we infer from the transcript of the instruction conference that Defendant tendered no instruction submitting comparative fault by Plaintiff. The verdict form contains no assessment of comparative fault.

2. Trial occurred May 10–11, 1994, four years after the collision.

Lugenbell's report reflects Defendant "was drinking." Despite that, Lugenbell did not cite Defendant for any "alcohol-related offense." Lugenbell testified that had he believed Defendant was intoxicated, he "would have cited him on it."

Lugenbell recalled he did cite Defendant for being on the wrong side of the road or failure to yield the right of way, and Defendant was convicted.

Plaintiff read to the jury excerpts from Defendant's pretrial deposition. We set forth the excerpts in the next five paragraphs, slightly paraphrased for brevity.

I left a mall in Branson about 10:30 a.m., March 5, 1990. I gassed up my car and bought a half pint of vodka. Between 11:00 a.m. and the time of the accident, I drove around in Rockaway Beach and Forsyth and drank about half of the vodka, mixed with pop.

The accident occurred at 1:00 or 2:00 p.m., along in there. I took a muscle relaxer that day for a spasm in my back. The sticker on the bottle said: 'Take with food' and 'May cause drowsiness.' I remember no warning about mixing the relaxer with alcohol.

In June, 1993, I answered an interrogatory under oath and disclosed nothing about consumption of alcohol. I was too embarrassed to put it down.

I did not apply my brakes before impact. I had no time to do anything except jerk the wheel. I did not see the other vehicle long enough to identify it as a wrecker. My speed at point of impact was 40 or 45 miles an hour. I was given a ticket for failure to yield the right of way and pled guilty. I figured I was on the wrong side.

I do not remember being jostled around. I remember the impact, and I woke up, and they were getting me on a stretcher. My vehicle was totaled out.

Plaintiff's second point asserts the trial court erred in barring Plaintiff from presenting the following segment of the deposition testimony of Aly Mohammed Mohsen, a physician:

"Q  Doctor, I'd also now like to ask you your professional opinion about the effect of mixing certain chemicals with alcohol. Specifically I'd like your professional opinion as to the effect of mixing a Norgesic, a muscle relaxer, with alcohol.

.    .    .    .    .

A  As far as long-term effect or as far as short-term effect?

Q  Let me give you a hypothetical, Doctor. Let's assume someone would take a Norgesic muscle relaxer at 1:00 o'clock and in the next hour consume about a quarter of a pint of vodka. Would that—would those chemicals combine to cause some sort of an effect?

.    .    .    .    .

A  The combinations of alcohol and Norgesic Forte is basically it's going to accelerate or actually accentuate the potency of the alcohol as well as the medicine which is the Norgesic Forte.

Q  Would this impair someone's ability to drive?

A  Yes.

.    .    .    .    .

Q  ... You prescribe Norgesics and muscle relaxers, don't you, Doctor?

A  Yes.

Q  Do you expect those bottles to carry a warning label warning about mixing the chemicals with alcohol?

.    .    .    .    .

A  Yes. In fact, I do—even prior—I mean, even though labels are made by the pharmacies, I do warn patients of mine when they are receiving those medications that they should not be receiving any alcohol and they should avoid alcohol. It's a combinations [sic] because of the combined effect of alcohol with those medications."

Defendant argues that if the trial court erred in barring the above testimony, the error was harmless. Defendant's logic is that the testimony was relevant, if at all, only on the issue of liability, and because the jury found for Plaintiff on that issue, Plaintiff cannot demonstrate prejudice from exclusion of the testimony. Defendant points out, and

we agree, that the testimony was irrelevant to the issue of Plaintiff's damages on Count I.

Plaintiff responds that the testimony was relevant to Count II, the claim for punitive damages, in that drinking alcohol and taking muscle relaxers while driving manifests conscious disregard for the safety of others. Therefore, says Plaintiff, if this case is remanded for a new trial on Count II, the testimony should be received.

■ Because the issue of admissibility is moot unless we order a new trial on Count II, judicial economy suggests we decide whether the trial court erred in granting Defendant's motion for directed verdict on Count II before grappling with the admissibility issue. However, we must determine whether *Grippe v. Momtazee,* 696 S.W.2d 797 (Mo. banc 1985), allows us to address the issues in that order.

In *Grippe,* a wrongful death suit, a jury returned a verdict for the defendants. The trial court denied the plaintiff's motion for a new trial. The plaintiff appealed, alleging four trial errors. The issue addressed by the Supreme Court of Missouri was whether an appellate court could avoid deciding the assignments of error by holding that the plaintiff failed to make a submissible case.

In its analysis, the Supreme Court explained the plaintiff could not raise the submissibility issue because the trial court submitted the case to the jury as the plaintiff requested, and the defendants could not raise the submissibility issue because the jury returned a verdict favorable to them. *Id.* at 799. Therefore, neither side was aggrieved by the submission to the jury, hence neither side had standing to challenge submissibility. *Id.* Only after a favorable ruling for the plaintiff on one or more assignments of error could the appellate court reach the submissibility issue, a question inherent in deciding whether the error merited reversal or remand for a new trial. *Id.*

There is a fundamental difference between *Grippe* and the instant case. Here, the trial court granted Defendant's motion for a directed verdict on Count II, taking that count away from the jury. Plaintiff was aggrieved by that ruling, and has assigned it as error in his third point. Consequently, *Grippe* does not bar us from addressing that point before the second point. *Courtney v. Emmons,* 702 S.W.2d 139, 142[7] (Mo.App.E.D.1985).

■ *Stojkovic v. Weller,* 802 S.W.2d 152 (Mo. banc 1991), cited by both sides, sets forth the law to be applied in determining whether Plaintiff made a submissible case on Count II. In *Stojkovic,* a woman was injured in a two-vehicle collision. She and her husband sued the driver of the other vehicle for actual and punitive damages. The trial court directed a verdict for the defendant on the punitive damage claims. A jury awarded the woman damages for her injuries and awarded her husband damages for loss of consortium.

On appeal by the plaintiffs, the Supreme Court of Missouri held the trial court erred in excluding evidence described by the majority opinion as "evidence of erratic driving manifesting a reckless disregard of consequences exacerbated by intoxication." *Id.* at 155. An account of the evidence appears in the opinion, *id.* at 154, and need not be repeated here. The Supreme Court held punitive damages can be awarded in a civil action against a drunken driver if his conduct shows complete indifference to or conscious disregard for the safety of others. *Id.* at 155. That requirement is met if the driver knew or had reason to know that there was a high degree of probability that his action would result in injury. *Id.* Because the evidence excluded by the trial court was sufficient to make a submissible case for punitive damages, the Supreme Court remanded the cause for a new trial on that claim. *Id.* at 156.

The facts in the instant case bear little resemblance to *Stojkovic.* The collision here occurred in the daytime. The pavement was dry. The speed limit was 55 miles per hour. Defendant testified his speed at impact was 40 or 45 miles per hour. There was no evidence he was going any faster, and no evidence of any erratic driving by him other than that which caused the collision.

Trooper Lugenbell, who had investigated some 1,500 accidents involving drivers who

had consumed alcohol, did not cite Defendant for any alcohol-related offense.

The length of time during which Defendant consumed the four ounces of vodka is uncertain. He evidently began around 11:00 a.m. The time of the collision is not precisely shown. Defendant testified it occurred at 1:00 or 2:00 p.m. However, a chiropractor to whom Plaintiff went for treatment the day after the collision recorded Plaintiff as saying the collision occurred at 4:00 p.m.

Plaintiff testified he asked Defendant at the scene whether he was all right, and Defendant replied he thought he was. Plaintiff described no conduct or speech by Defendant indicative of intoxication.

In sum, all the evidence shows is: (a) sometime on the day of the collision, Defendant took a muscle relaxer, (b) over a period which could have been as long as five hours leading up to the collision, he consumed four ounces of vodka, and (c) he lost control of his automobile in a curve while driving ten miles per hour below the speed limit.

■ We hold the above evidence does not meet the *Stojkovic* requirement for a submissible punitive damages claim. That is, the evidence is insufficient to support a finding that Defendant was a drunken driver whose conduct showed complete indifference to or conscious disregard for the safety of others. Such a finding requires evidence demonstrating Defendant knew or had reason to know that there was a high degree of probability that his action would result in injury. *Stojkovic*, 802 S.W.2d at 155. Such evidence is absent here.

Whether a lesser standard would be better public policy is not for us to decide. We are constitutionally bound to follow *Stojkovic*. Mo. Const. Art. V, § 2 (1945); *Smith v. St. Louis Public Service Co.*, 364 Mo. 104, 259 S.W.2d 692, 694[1] (banc 1953).

Inasmuch as Plaintiff's evidence was insufficient as a matter of law to support a claim for punitive damages, the trial court did not err in granting Defendant's motion for directed verdict on Count II. *Bandag of Springfield, Inc. v. Bandag, Incorporated*, 662 S.W.2d 546, 550[3] (Mo.App.S.D.1983). Plaintiff's third point is denied.

Our ruling on the third point would have been the same even had the trial court received Dr. Mohsen's testimony. The hypothetical question posed to him assumed a driver took a muscle relaxer at 1:00 and consumed a quarter of a pint of vodka in the next hour. As we have seen, the evidence does not support that hypothesis. Defendant ingested the vodka over a longer period.

■ Mohsen's testimony that combining alcohol and a muscle relaxer will accentuate the potency of each and impair someone's ability to drive does not supply the element of "complete indifference to or conscious disregard for the safety of others" required by *Stojkovic*, 802 S.W.2d at 155. Therefore, adding Mohsen's testimony to the other evidence does not produce a submissible case for punitive damages.

That being so, we need not decide whether the trial court erred in excluding Mohsen's testimony. Defendant registered sundry objections to it. Whether any were valid is now inconsequential, hence Plaintiff's second point is moot.

■ Turning to Plaintiff's first point, we find guidance in *McDermott v. Carosal Development*, 647 S.W.2d 611 (Mo.App.E.D. 1983). There, a jury awarded a plaintiff $3,000 for an injury to one of her teeth. She appealed, seeking a new trial on the issue of damages only. *Id.* at 611–12. One of her claims of error was that the trial court excluded portions of a dentist's deposition offered by her. She, like Plaintiff in the instant case, made no allegation in her motion for new trial that the amount of the verdict was inadequate.

The appellate court held in *McDermott* that even if the plaintiff's motion for new trial had specifically attacked the adequacy of the verdict, her assignments of error need not be considered if the appellate court found the verdict was not inadequate. *Id.* at 612[1]. *Accord: Shepherd v. St. Louis–San Francisco Railroad Co.*, 510 S.W.2d 432, 433[1] (Mo.1974). That is because any such errors were cured by the verdict in her favor. *McDermott*, 647 S.W.2d at 612 (citing *Coch-*

*ran v. Wilson,* 287 Mo. 210, 229 S.W. 1050, 1056[5] (1921)).

Plaintiff testified he began "getting stiff" the evening of the collision. His wrists, elbows, shoulders and knees ached. His ankles, lower back and hips were sore. These symptoms persisted the following morning, so he went to Frank Arnold, a chiropractor.

Arnold had previously treated Plaintiff for lower back pain. The first such treatment was October 2, 1989. We deduce from the record that on September 30, 1989, Plaintiff strained his back while installing a transmission in his wrecker. On October 2, 1989, while "sweeping up the shop," Plaintiff reached down to pick up a shovel and felt his lower back "slip out." He sought treatment from Arnold that date. Arnold adjusted Plaintiff's back. Arnold repeated the treatment the next day (October 3). A few days later, Arnold did "[b]asically the same thing."

Plaintiff stayed off work "two to three weeks," lying on a couch with "plywood under it." Plaintiff then resumed working. He testified he had no physical restrictions or limitations.

Plaintiff next saw Arnold the day after the collision. Arnold adjusted Plaintiff's spine. Arnold treated Plaintiff eight times in the three weeks immediately after the collision. Arnold testified the collision did "some damage to the low back." However, in a report of his findings, Arnold answered "No" to a question asking whether the injury would result in permanent damage. Asked about that answer at trial, Arnold characterized it as "too optimistic."

In the months following the collision, Plaintiff continued receiving treatment from Arnold. The frequency gradually decreased.

On July 31, 1993, Plaintiff was driving a wrecker which was struck by an automobile. The circumstances were similar to the 1990 collision.

Plaintiff returned to Arnold for treatment. Plaintiff's symptoms included pain in a higher area of the back than before. Plaintiff continued receiving treatment from Arnold until time of trial.

Arnold testified the "majority of injury" from the 1990 collision was in Plaintiff's low back, and the "majority of injury" from the 1993 collision was in his upper back. Arnold's bill for Plaintiff's treatment between March 6, 1990, and July 31, 1993, was $2,562.

Plaintiff also saw Dr. Mohsen for treatment after the 1990 collision. Mohsen testified the 1993 collision was a "contributing cause" to the problems Plaintiff was experiencing at time of trial. Mohsen's bill for Plaintiff's treatment was $1,717.

Plaintiff asked the jury to award him the sum of the bills of Arnold and Mohsen. Plaintiff also asked for damages for pain and suffering, and for diminution in ability to work and enjoy life. He did not ask for lost earnings (past or future) or for future medical expenses.

The jury's exercise of its discretion in the assessment of damages is conclusive unless the verdict is so shockingly inadequate as to indicate it is the result of passion, prejudice, or a gross abuse of that discretion. *McDermott,* 647 S.W.2d at 612; *Ford v. Long,* 514 S.W.2d 378, 380[2] (Mo.App.1974).

Although the $8,000 verdict here is modest, we do not find it shockingly inadequate, and nothing in the record suggests the verdict resulted from passion, prejudice, or a gross abuse of the jury's discretion.

Having decided that, we need not adjudicate Plaintiff's first point—a complaint that the trial court erred in excluding testimony that Plaintiff's "impairment is 13 percent for the body as a whole" as a result of the 1990 collision.[3]

Judgment affirmed.

GARRISON, P.J., and PARRISH, J., concur.

---

**3.** That testimony was in Dr. Mohsen's deposition.