**Mary R. SIMPSON and James E. Simpson, Plaintiffs–Appellants,**

v.

**John K. SMITH, Defendant–Respondent.**

No. 15871.

Missouri Court of Appeals,
Southern District,
Division Two.

May 31, 1989.

James A. Broshot, Mazzei and Broshot, Steelville, for plaintiffs-appellants.

Dan L. Birdsong, Thomas, Birdsong, Clayton & Haslag, P.C., Rolla, for defendant-respondent.

MAUS, Judge.

In this wrongful death action the defendant driver ran over the plaintiffs' decedent who was lying in Crawford County Highway JJ. A jury found the plaintiffs' damage to be $5,000. They assessed fault 90 percent to the decedent and 10 percent to the defendant. The plaintiffs state three points on appeal.

The following is an outline of the facts. Nineteen-year-old Brett Simpson lived in Bourbon, Missouri, with his mother, plaintiff Mary R. Simpson. His parents were divorced and his father, plaintiff James E. Simpson, lived in Indiana. Brett was not regularly employed. During the summer months he did yard work two or three days per week for a nursing home. Brett's cousin Mark Hoerath lived with Brett and his mother.

On August 31, 1986, Brett and Mark and two sisters, Deborah Covington and Donna

Ballentine, floated the Meramec on a four-man raft from about 11:00 a.m. to 4:30 p.m. They consumed a quantity of beer, whiskey and vodka. They smoked "a couple of joints" of marihuana. After they left the river, Brett and Mark went to their home. The young women went to the mobile home where they lived with their children and their mother. The mobile home was located on Highway JJ. After having something to eat, Brett and Mark walked to the mobile home. Two other men were in the mobile home. Nevertheless, Brett and Mark went inside. During the evening, they drank more alcohol. Brett went to sleep or passed out in a chair. About 10:30 p.m. the mother told Mark to take Brett home.

During the trial, reference was made to a diagram drawn by the lawyer for the defendant. The record is replete with "over here" and "over there". Several pictures of the scene of the accident were introduced. However, this court does not have the benefit of that diagram or the exhibits. From the testimony it is reasonably inferred that Highway JJ ran in an east-west direction past the mobile home. Highway JJ descended into a dip a short distance east of the mobile home. The place of the tragedy was approximately 100 feet east from the mobile home. A short distance east of that place Highway JJ was intersected by north-south Cedar Street.

Brett and Mark left the mobile home walking east on Highway JJ to reach their home. Between 11:00 and 12:00 p.m. high school principal William Watts and his family approached Highway JJ on Cedar Street. Watts' teenage daughter was driving. After stopping they turned onto Highway JJ. As they turned the daughter said, "look at that." Watts saw two young men. One wearing a white shirt and blue jeans was staggering around in the middle of the highway lighting a cigarette. The other, wearing dark clothing, was on the shoulder. After stopping and making a right turn, Watts moved 10 to 15 feet before he saw the one lighting a cigarette. They did not see the other one until they started up the hill and the lights hit him. He was 30 to 50 feet away.

Douglas Pennock dated Donna. On the night in question Pennock drove his over-the-road tractor unit south on Cedar Street. He stopped at the stop sign. As he turned right onto Highway JJ, he saw something lying in the road. He turned on his driving lights. Only when he was "right upon it," he could tell it was a person. The decedent had on dark clothes. He was lying in a fetal position with his back toward Cedar Street. Pennock swerved around the person and drove to the mobile home. While he and Donna argued in front of the mobile home, they heard a car hit the person.

The plaintiffs placed in evidence excerpts from the deposition of the defendant. These excerpts established the following. About midnight the defendant was driving from his work west on Highway JJ to his home. His speed was about 30 miles per hour. When he was about thirty feet away he saw something in the highway. He "tried to apply my brake, but I don't know if I hit my brake before I hit him or not." The defendant's automobile "came to just barely crawling" then he pulled ahead and stopped. Other testimony established the decedent had been dragged approximately ninety feet. The defendant drove to the top of the hill, turned around and came back to the decedent. Pennock was there. Pennock unsuccessfully tried to reach the police on the CB radio in his tractor. The defendant then drove back to a parking lot and contacted a police officer where he had previously seen the police officer.

The defendant called Donna Ballentine as his sole witness. She testified that when Pennock came to the mobile home he didn't mention he had seen the decedent lying in the road. He was mad and argued with her. After they had argued for about five minutes, she saw the defendant driving west on Highway JJ. It looked as if he hit a speed bump.

The plaintiffs' first point arises from an order of the trial court sustaining the defendant's motion in limine. That motion alleged the following. After the accident, the defendant was subjected to a blood test. The test showed the defendant's

blood alcohol to be 0.003 and a trace of marihuana that could not be quantified as to any amount. The motion prayed for an order that plaintiffs refrain from asking any questions concerning defendant's drinking, use of marihuana or any blood test done on him. The motion was sustained.

The plaintiffs' first point is "[t]he trial court erred in refusing to allow plaintiffs to introduce evidence that defendant has been drinking and using marihuana prior to the accident, ...." The defendant's motion was based upon the doctrine established in *Doisy v. Edwards*, 398 S.W.2d 846 (Mo.1966). That doctrine is that evidence of drinking is not admissible where "[t]here was no evidence showing erratic driving by defendant or any other circumstance from which it might be inferred that defendant had an impaired physical condition at the time of collision." *Doisy v. Edwards, supra*, at 849–850. That doctrine has been consistently followed in this state. The doctrine is analyzed and the cases collected in a scholarly and comprehensive manner in *Parry v. Staddon*, 769 S.W.2d 811 (Mo. App.1989).

The plaintiffs do not question the soundness of that doctrine. They argue the trial court erred because there was evidence of erratic driving or other circumstances within the meaning of the doctrine of *Doisy*. See *May Department Stores Co. v. Adworks, Inc.*, 740 S.W.2d 383 (Mo.App.1987); *Stephenson v. McClure*, 606 S.W.2d 208 (Mo.App.1980). The case will be decided on that basis. Moreover, this court is bound by *Doisy*. *Parry v. Staddon*, supra. The plaintiffs' first point has no merit procedurally or factually. The plaintiffs made no offer of proof and there was no such evidence.

■ "There is a dearth of authority in this state concerning the appropriateness, scope and effect of orders sustaining motions in limine. Annot., Motions to Exclude Prejudicial Evidence, 63 A.L.R.3d 311 (1975)." *Bender v. Burlington–Northern Railroad Co.*, 654 S.W.2d 194, 197 (Mo. App.1983). It has been repeatedly held that an order passing upon a motion in limine is an interlocutory order. *Williams*

*v. Enochs*, 742 S.W.2d 165 (Mo. banc 1987); *Manner v. H.E.T., Inc.*, 739 S.W.2d 724 (Mo.App.1987); *Frein v. Madesco Investment Corp.*, 735 S.W.2d 760 (Mo.App.1987); *State ex rel. Westfall v. Gerhard*, 642 S.W.2d 679 (Mo.App.1982). It is clear that even though a motion in limine to exclude certain evidence is denied, a timely objection must be made at trial to preserve the issue of admissibility for review. *Williams v. Enochs*, supra; *Anderson v. Rojanasathit*, 714 S.W.2d 894 (Mo.App. 1986). It has been held "[t]he reason for a formal offer of proof does not exist if the trial court and counsel are, by other means, sufficiently advised to what the testimony of the witness will probably be if he is allowed to testify." *Kummer v. Cruz*, 752 S.W.2d 801, 807 (Mo.App.1988). It is not clear, however, even if the other bases for an exception to the requirement of an offer of proof are present, see *Frank v. Environmental Sanitation Management*, 687 S.W.2d 876 (Mo. banc 1985), an order sustaining a motion in limine obviates the necessity of an offer of proof at trial. See *Karashin v. Haggard Hauling & Rigging, Inc.*, 653 S.W.2d 203 (Mo. banc 1983); *Bender v. Burlington–Northern Railroad Co.*, supra. Cf. *Gaston v. Hunter*, 121 Ariz. 33, 588 P.2d 326 (1978); *State v. Church of Nazarene of Logansport*, 268 Ind. 523, 377 N.E.2d 607 (1978); *State v. Miller*, 229 N.W.2d 762 (Iowa 1975); *Keene v. Wake County Hospital Systems, Inc.*, 74 N.C.App. 523, 328 S.E.2d 883 (1985); *Braden v. Hendricks*, 695 P.2d 1343 (Okl. 1985); *Zehner v. Post Oak Oil Company*, 640 P.2d 991 (Okl.App.1981).

It is clear that if such an order is proper when made, a party cannot complain of the exclusion of evidence made admissible by subsequent evidence unless an offer of proof is made at trial. "The trial court did not exclude evidence of the prior accidents when that evidence was relevant. In such a context, the defendant was required to make an offer demonstrating the relevancy of the evidence it contends was erroneously excluded." *Bender v. Burlington–Northern Railroad Co.*, supra, at 197. Also see *Frein v. Madesco Investment Corp.*, supra. Cf. *Sampson v. Missouri Pacific*

*Railroad Co.*, 560 S.W.2d 573 (Mo. banc 1978).

· In this case, when the motion in limine was heard, there was no evidence of erratic driving or other circumstances before the court. Under the doctrine of *Doisy*, the motion in limine was properly sustained. With the exception hereafter noted, the plaintiffs made no offer of proof. For this reason, their first point has no merit.

■ Further, the plaintiffs' contention has no basis in fact. To demonstrate erratic driving or other circumstances establishing defendant's impaired condition, the plaintiffs' arguments include the following: "He saw the victim in the road before striking him, thirty feet away, while going only 30 miles per hour." "He ran over Brett, after seeing him, and yet made no effort to stop but drove on to the top of the hill, dragging the body of his victim, slowed to a crawl, and only then stopped and came back to confirm what he had done." Such arguments misstate and ignore the record. They emphasize the absence of the required evidence.

These arguments fail to recognize evidence that the scene was very dark, was at the bottom of a dip, and the decedent was in the fetal position wearing dark clothing. The uncontradicted testimony of Watts and Pennock establishes defendant's visibility of the decedent was limited to a very short distance. The arguments ignore the generally judicially noticed fact that reaction time to apply the brakes at 30 miles per hour is 33 feet, obviously greater than 30 feet. Further, in this case the trial court acceded to the plaintiffs' request to judicially notice "that average normal braking distance of a car at 25 miles per hour is 91 feet." They misstate the evidence the defendant did attempt to stop. They ignore the defendant's statement "[i]t came to just barely crawling, then I pulled ahead." The plaintiffs' first point has no factual basis. The point is denied.

The plaintiffs' second point is that the trial court erred in not permitting them to show that a blood test was administered to the defendant and that he had been drinking and using marihuana after the defendant opened the door to that evidence. That point has the following background. In cross-examination of two investigating officers, his counsel elicited testimony that the defendant was normal, he was not impaired and not intoxicated. Initially, the plaintiffs asked to show if a blood test was taken or blood count had for marihuana. Counsel for the defendant responded that "we let" the lab man go home. Counsel for the plaintiffs then said, "All I want to do is ask him if they took him in for a blood test." The court declined to let the plaintiffs ask if a test was done "without further evidence of some kind."

■ This record is very cryptic concerning what happened in respect to the lab man and the basis for the decision of the trial court. However, it is not necessary to speculate on those subjects. The necessity of an offer of proof has been established in the disposition of the first point. The plaintiffs' point overstates their offer of proof. Not every offer of proof will preserve an objection to the exclusion of evidence. The offer must establish the proposed admissibility and relevance of the tendered evidence. *Sampson v. Missouri Pacific Railroad Co.*, supra. Even considering counsel's statement to be an offer of proof, it does not meet that standard. It may have been the policy of the police department to ask all drivers involved in an obviously fatal accident to submit to such a test. "[W]e would have to guess whether the content of the witness' answer would have been improper evidence. The point was not properly preserved for review." *Frank v. Environmental Sanitation Management, supra*, at 884.

■ The plaintiffs' last point is "[t]he trial court erred in permitting defendant's counsel to argue that the sole cause of the death of plaintiff's [sic] deceased was the negligence of someone other than than [sic] the defendant...." The point has the following background. Preceding the argument in question, counsel for the defendant, without objection, emphasized Pennock's failure to drag the decedent from the road, but acknowledged Pennock was not legally responsible. His argument continued with the following:

[MR. BIRDSONG:] Ladies and gentlemen, the responsible person for this

man's death doesn't sit in that chair. If anything, there are two responsible people for the death.

MR. MAZZEI: Your Honor, I'm going to object to this argument as being improper, pointing at an empty chair.

THE COURT: Overruled. Proceed.

Defense counsel, after arguing the decedent was responsible, then repeated that Pennock was not legally responsible. He added that the defendant was not responsible.

The plaintiffs contend MAI 1.03 (1981) causes this argument to be improper. This does not follow. MAI 1.03 does not prevent a defendant from introducing evidence and arguing that the acts of one other than the defendant were the sole cause of the accident. *Hoehn v. Hampton*, 483 S.W.2d 403 (Mo.App.1972). The plaintiffs have not established that pointing at an empty chair did not fall within that parameter. The point is denied and the judgment is affirmed.

FLANIGAN, P.J., and PREWITT, J., concurs.

HOGAN, J., not participating.