Lena KELLY and Earl Dean Riggs,
by his Next Friend, Michelle
Riggs, Appellants,

v.

Dennis Joe ELLIS, Respondent.

No. 18972.

Missouri Court of Appeals,
Southern District,
Division Two.

May 5, 1994.

Daniel T. Ramsdell, Kurt J. Larson, Ramsdell & Associates, Springfield, for appellants.

M. Douglas Harpool, Craig A. Smith, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, for respondent.

CROW, Judge.

This litigation arose from a nighttime incident on February 21, 1992, in which two pedestrians, Earl Dean Riggs ("Earl") and Shona Kelly ("Shona") were struck by an automobile driven by Dennis Joe Ellis ("Defendant") on the "outer road" of Interstate Highway 44 in Greene County. Earl was injured, but survived. Shona died.

Two suits were filed against Defendant. Plaintiffs in the first were: (1) Earl; (2) Earl's father, William Riggs ("William"); and (3) Earl's mother, Michelle Riggs ("Michelle"). By Count I of that petition, Earl, by his next friend, Michelle,[1] sought damages for his bodily injuries. By Count II, William asserted a derivative claim resulting from Earl's injuries. By Count III, Michelle asserted a similar derivative claim.

The second suit was a wrongful death action by Lena Kelly ("Lena"), Shona's mother.

On motion by Defendant, the two suits were "consolidated" and tried simultaneously. Just before trial began, William and Michelle dismissed their claims (Counts II and III, respectively, of the first suit).[2]

On Earl's claim, the jury assessed 25 percent fault against Defendant and 75 percent against Earl. The jury found Earl's damages, disregarding his fault, were $100,000.

On Lena's claim, the jury assessed 25 percent fault against Defendant and 75 percent against Shona. The jury found Lena's damages, disregarding Shona's fault, were $45,000.

The trial court entered judgment per the verdicts, awarding Earl $25,000 and Lena $11,250.[3]

Earl and Lena ("Appellants") bring this appeal. Their brief presents three points relied on, the first of which is:

"The trial court erred in failing to sustain Appellants' Motion to Quash [Defendant's] Subpoena Duces Tecum, whereby [he] obtained Appellants' videotape of a reconstruction of the subject automobile collision, because said videotape was Appellant's [sic] work product, immune from discovery by [Defendant], and [Defendant] did not make the necessary showing, pursuant to Rule 56.01 of the Missouri Rules of Civil Procedure, that [he] had a substantial need for the materials and that [he] was unable, without undue hardship, to obtain the substantial equivalent of the materials by other means."

The statement of facts in Appellants' brief does not mention the videotape.

The argument following the first point in Appellants' brief states—without benefit of a supporting page reference to the transcript—that one Rick Gilmore "videotaped" a July 6, 1992, "accident reconstruction" at the instance of Appellants' counsel.

By seining the transcript,[4] we discover that on July 6, 1992, Charles Lee Vaughan, a 25-year veteran of the Springfield Police Department whose duties include teaching the technique of motor vehicle accident investigation, went to the accident site. There, Vaughan measured various distances, then drove an automobile similar to Defendant's toward the point of impact to determine such factors as visibility and stopping distance.

Although the evidence is imprecise, it supports an inference that Gilmore was in the rear seat of Vaughan's vehicle with a videotape camera, focused forward over Vaughan's

---

1. Count I alleged Earl was born June 17, 1978.

2. These dismissals do not appear in the record. However, Defendant's brief states the dismissals occurred, and Appellants, in response to an order of this Court concerning the matter, agree Defendant's brief is correct. Consequently, we shall treat the record as supplemented to include these dismissals. *Consumer Contact Co. v. Department of Revenue*, 592 S.W.2d 782, 785[1] n. 1 (Mo. banc 1980).

3. The trial court approved payment of attorney fees and expenses out of those awards. Those rulings are not attacked in this appeal.

4. Appellants filed only a partial transcript of the nine-day trial.

shoulder. By that means, Gilmore recorded Vaughan's "accident reconstruction" on videotape.

During pretrial discovery, Defendant learned of the videotape. Defendant served notice on Appellants that Defendant would take Gilmore's deposition on a designated date.

Appellants filed a "Motion to Quash Subpoenas Duces Tecum or in the Alternative, Motion for Protective Order." The motion alleged a subpoena duces tecum had been served on Gilmore [5] requiring him to appear for deposition and bring "any alleged ... video tapes in [his] possession." The motion prayed the trial court to quash the subpoena or, in the alternative, to prevent Defendant from requiring production of any videotape.

The trial court denied the motion.

At trial, Vaughan testified extensively about his "accident reconstruction," including what he could see at various distances approaching the point of impact. On cross-examination, he was shown the videotape made by Gilmore. Vaughan identified it.

Defendant offered the videotape in evidence. Over Appellants' objection, the trial court received it.

Appellants' theory of error, as we comprehend it, is that Defendant failed to show he (a) had substantial need of the videotape in preparing for trial, and (b) was unable, without undue hardship, to obtain its substantial equivalent by other means.

■ Appellants have not filed the videotape in this Court. *See:* Rule 81.16, Missouri Rules of Civil Procedure (1994). Consequently, we may consider it immaterial to the issues on appeal. *Id.; David Cooper, Inc. v. Contemporary Computer Systems, Inc.,* 846 S.W.2d 777, 780 (Mo.App.S.D.1993); *City of Lee's Summit v. Collins,* 615 S.W.2d 592, 595[8] (Mo.App.W.D.1981). Inasmuch as we have not seen the videotape, we cannot hold the trial court could not have reasonably found Defendant had substantial need of it in preparing for trial and was unable, without undue hardship, to obtain its substantial equivalent by other means. Indeed, the in-

tendment and content of the absent videotape will be taken as favorable to the trial court's ruling. *David Cooper, Inc.,* 846 S.W.2d at 780[4]; *In re Marriage of Gourley,* 811 S.W.2d 13, 16[3] n. 2 (Mo.App.S.D.1991).

The above reasons are sufficient to deny Appellants' first point.

■ An additional, and equally sufficient, reason is found in *Washington University v. Royal Crown Bottling Co.,* 801 S.W.2d 458 (Mo.App.E.D.1990). There, the appealing parties argued that a pretrial ruling compelling them to produce various memoranda—allegedly work product—was erroneous. *Id.* at 470. The Eastern District of this Court held that in order to prevail, the complaining parties had to show they were prejudiced at trial by the erroneous and prejudicial admission of the memoranda in evidence. *Id.* Because they failed to do so, there was no basis for reversal. *Id.* at [26].

Here, Appellants do not contend the trial court erred in receiving the videotape in evidence, nor do Appellants attempt to demonstrate they were prejudiced thereby. Accordingly, Appellants have shown no basis for reversal.

Defendant argues there are other valid reasons to reject Appellants' first point. Additional reasons need not be considered, as those above are ample.

Appellants' second point is:

"The trial court erred in refusing to admit evidence demonstrating that [Defendant] had been drinking alcohol and/or was intoxicated by alcohol consumption, because evidence of [his] consumption of alcohol prior to the subject collision was admissible, in that [his] slow reaction time and his failure to take evasive action immediately prior to the collision was a sufficient basis from which the jury could infer that [he] had an impaired physical condition at the time of the collision."

The point does not identify the excluded evidence and does not specify any particular ruling by the trial court believed by Appellants to be erroneous. Furthermore, the statement of facts in Appellants' brief does

---

5. The subpoena duces tecum is not in the legal file.

not mention any evidence of Defendant's drinking or intoxication.

From the argument following the second point in Appellants' brief, we learn that on the fifth day of trial, Appellants, by motion, informed the trial court that Defendant (during deposition) admitted consuming a "mixed drink" at "Steak–N–Ale" before the accident. The motion further informed the trial court that one Tracy Arps, Defendant's "server" at Steak–N–Ale, would testify that Defendant had two mixed drinks and two glasses of wine with his meal. Thus, according to the motion, Appellants had evidence that Defendant consumed five alcoholic beverages before the accident. Appellants' motion prayed the trial court to receive that evidence.

The trial court addressed Appellants' request outside the jury's presence. The record demonstrates the trial court and counsel were mindful of *Doisy v. Edwards*, 398 S.W.2d 846 (Mo.1966), which arose from a two-automobile collision. Unsuccessful at trial, the plaintiff in *Doisy* appealed, arguing the trial court erred in excluding testimony that the defendant "had been drinking." *Id.* at 849. The Supreme Court said:

> "Patrolman Doney testified before the court and outside the hearing of the jury that he recalled he smelled liquor on defendant's breath—it smelled like beer. It was not known whether defendant's faculties were impaired or not, and the only thing he noted on the report of accident was that defendant had been drinking. There was no evidence that defendant's drinking had anything to do with the collision. There was no evidence showing erratic driving by defendant or any other circumstance from which it might be inferred that defendant had an impaired physical condition at the time of the collision. Under [citations omitted], such evidence would have been admissible if coupled with other evidence tending to show that defendant was under the influence of intoxicating liquor. That other evidence is lacking and the trial court did not err in excluding the testimony of Patrolman Doney."

*Id.* at 849–50[3].

The above principle was discussed in the opinion of Covington, J., concurring in result in *Stojkovic v. Weller*, 802 S.W.2d 152 (Mo. banc 1991). There, we find:

> "In Missouri the law has been that in an action to recover damages for injuries sustained in a motor vehicle accident, evidence of intoxication of a party is admissible as a circumstance to be considered with other facts in evidence to determine the question of negligence. *Broderson v. Farthing*, 762 S.W.2d 548, 549 (Mo.App.1989). Evidence of the drinking of alcohol, however, as opposed to actual intoxication, is admissible only when coupled with evidence of erratic driving or some other circumstance from which it might be inferred that defendant's physical condition was impaired at the time of the collision. Before evidence of alcohol consumption becomes relevant, the other evidence must support an inference that the drinking caused the party to drive in an erratic manner and that the erratic driving caused the collision. The evidence must not include guess work, conjecture and speculation as to the existence of the necessary facts to make the conclusion. *Id.* Erratic driving involves something more than mere negligence. *Id.* at 551. It includes 'abnormal, peculiar, unaccountable and aberrant operation of the vehicle.' *Id.* 'Erratic driving is not the product of carelessness or of inattention but is conduct so heedless of circumstances as to be attributable to some impairment of faculties or of function.' *Id.*"

*Stojkovic*, 802 S.W.2d at 156.

Appellants argued to the trial court that the testimony of Vaughan—which had not yet been presented—would demonstrate that Defendant's driving was erratic. Specifically, Appellants asserted Vaughan's testimony would show Defendant could have seen Earl and Shona—who were walking on the road on Defendant's side—when Defendant was 450 feet away. Additionally, said Appellants, evidence already presented showed the rear tires of Defendant's vehicle were only 28 feet from Earl and Shona when the brakes were applied.

Defendant's lawyer argued no evidence of erratic driving or impairment had been pre-

sented. Moreover, said Defendant's lawyer, the highway patrolman had already testified and, had the issue of intoxication been raised, the patrolman:

"... would have testified that he did do an interview of the Defendant at the scene, that [Defendant] told the trooper that he had had one drink earlier that evening with the meal, that the trooper did do a field sobriety test, that the trooper did absolutely unequivocally convince himself that [Defendant] was not intoxicated, that he was not in any way impaired, and the trooper did not arrest him, did not issue him a ticket and did not feel that he was in any way under the influence of alcohol."

Defendant's lawyer added that emergency medical personnel at the scene (who had also already testified) would have testified they talked to Defendant there and observed no evidence of impairment or intoxication.

The trial court ruled: "There is no evidence in the case at this time of erratic driving."

Appellants thereupon made an offer of proof by presenting testimony from Ms. Arps. She recounted that on February 21, 1992, she was a server at Steak–N–Ale. On that evening, she served a group consisting of six people, one of whom was Defendant. According to Ms. Arps, "[T]hey had ordered two rounds of drinks, they ordered a bottle of wine before dinner, and a bottle of wine before their dinner came."

Regarding the wine, Ms. Arps recalled she presented it to the group, opened it, placed a glass in front of each person, and filled each glass "about three-fourths." The group then "made a toast." Ms. Arps repeated the serving process with the second bottle, replacing the used glasses with clean ones.

Ms. Arps testified that Defendant ordered two "mixed drinks" for himself. Although she did not see him drink either one, she later removed empty glasses from in front of him. Ms. Arps conceded she did not see Defendant drink any wine.

On the sixth day of trial—the day following the offer of proof—Appellants presented to the jury certain excerpts from Defendant's deposition. After that, Appellants presented

Vaughan's testimony regarding the "accident reconstruction." Appellants insist this evidence, viewed favorably to them, satisfied the *Stojkovic* test, i.e., it was sufficient to support a finding that Defendant's driving was erratic and he had an impaired physical condition.

Whether that is so is an issue we need not decide.

Appellants' second point, as we comprehend it, does not maintain sufficient evidence had been presented to satisfy the *Stojkovic* test at the time they made their offer of proof through Ms. Arps' testimony. Instead, as we understand Appellants' argument, the evidence fulfilling the *Stojkovic* test came the following day.

Similar circumstances existed in *Simpson v. Smith*, 771 S.W.2d 368 (Mo.App.S.D.1989), a wrongful death action in which a driver ran over a man lying on a highway. After the accident, a "blood test" revealed the driver had a "blood alcohol" content of .003 and a trace of marijuana. *Id.* at 370–71.

Citing *Doisy*, 398 S.W.2d at 849–50[3]— *Stojkovic* had not yet been decided—the driver in *Simpson* filed a motion in limine, praying the trial court to exclude evidence of the blood test. 771 S.W.2d at 370–71. The trial court granted the motion. On appeal, the plaintiffs (parents of the decedent) argued the ruling was error inasmuch as there was sufficient evidence of erratic driving to satisfy *Doisy*. *Simpson*, 771 S.W.2d at 371.

■ This Court observed that a ruling on a motion in limine is interlocutory. *Id.* If the ruling is correct when made, a party cannot complain of the exclusion of evidence made admissible by subsequent evidence unless an offer of proof is made after the subsequent evidence. *Id.* This Court held that when the trial court granted the motion in limine, there was no evidence of erratic driving. *Id.* at 372.

In the instant case, we infer from the suggestions filed by Appellants in support of their motion on the fifth day of trial that the trial court had previously barred them from presenting evidence of Defendant's "alcohol consumption." We draw this inference from the first sentence of the suggestions, which

reads: "Up to this point in the trial, the court has ruled that evidence of defendant's drinking is not admissible." Thus, the instant case is, in that respect, identical to *Simpson.* Nothing in the record shows that when Appellants made their offer of proof through Ms. Arps' testimony, sufficient evidence had been presented to satisfy the *Stojkovic (Doisy)* test. As noted earlier, Appellants do not argue otherwise. Thus, in this respect the instant case is again identical to *Simpson.*

*Simpson* cited, and relied on, *Bender v. Burlington–Northern R. Co.,* 654 S.W.2d 194 (Mo.App.S.D.1983). There, a trial court granted a motion in limine. Evidence was thereafter presented which arguably made the excluded evidence admissible. 654 S.W.2d at 197. This Court held the party desiring to present the excluded evidence was obliged to make an offer of proof when such evidence became admissible. *Id.* The opinion observed: "The trial court did not exclude [such] evidence ... when that evidence was relevant." *Id.*

As reported earlier, Appellants maintain the excerpts they presented to the jury from Defendant's deposition, together with the testimony of Vaughan, satisfied the *Stojkovic* test. However, as we have seen, that evidence came the day after Appellants' offer of proof through Ms. Arps' testimony. We find nothing in Appellants' brief indicating they renewed their request to present evidence of Defendant's "alcohol consumption" after the trial court received the evidence mentioned in the first sentence of this paragraph. Therefore, the trial court never had an opportunity to consider whether that evidence fulfilled the *Stojkovic (Doisy)* test, thereby making the excluded evidence admissible.

■ An appellate court will not, on review, convict a trial court of error on an issue which was not put before it to decide. *Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 36[12] (Mo. banc 1982). Applying *Simpson, Bender,* and *Lincoln Credit,* we deny Appellants' second point.

Appellants' final point is:

The trial court erred in refusing to admit evidence demonstrating that [Defendant] had been drinking alcohol and/or was intoxicated by alcohol consumption, because evidence that [he] consumed alcohol was admissible for purposes of impeachment, in that [his] deposition testimony regarding the number of alcoholic drinks he consumed prior to the collision is directly contradicted by the testimony of Ms. Tracy Arps who testified that she served [Defendant] numerous drinks on the evening of the collision, and her testimony was, therefore, proper evidence for the jury to consider when evaluating [Defendant's] credibility as a witness.

This point, like Appellants' second point, does not identify any particular ruling by the trial court believed by Appellants to be erroneous. From the argument following the final point, we deduce Appellants are complaining about the trial court's ruling on the fifth day of trial, referred to in our discussion of Appellants' second point.

■ Appellants' final point fails for the same reason as their second point. When the trial court made its ruling, Defendant had not yet testified. He eventually did—on the eighth day of trial. Consequently, when the trial court made its ruling on the fifth day, there was no testimony by Defendant for Appellants to impeach.

Furthermore, Defendant's brief asserts Appellants never presented to the jury the admission by Defendant in his deposition that he had a "mixed drink" (one glass of creme de menthe and 7–Up) with dinner. Appellants do not dispute that.

Thus, at the time the trial court ruled, the evidence Appellants wanted to present would not have impeached Defendant's testimony, either by deposition or at trial, as no such testimony had yet been presented. As in *Simpson* and *Bender,* the trial court here did not reject the excluded evidence at a time when it became arguably admissible.

Appellants' brief does not indicate they sought to present evidence of Defendant's "alcohol consumption" after their unsuccessful effort on the fifth day of trial. We have examined Defendant's testimony (three days later) and have found no effort by Appellants to impeach it by evidence of Defendant's

"alcohol consumption." The trial court had no duty to consider the matter *sua sponte* at that juncture.

Appellants' final point is denied.

Judgment affirmed.

FLANIGAN, P.J., and GARRISON, J., concur.