CHRISTIAN HEALTH CARE OF SPRINGFIELD WEST PARK, INC., a Missouri Corporation, Plaintiff–Respondent,

v.

Carolyn V. LITTLE, as Guardian and Conservator for Mabel Young and George Young, Defendants–Appellants.

Nos. 25852, 25865.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 27, 2004.

Motion for Rehearing and Transfer to Supreme Court Denied Sept. 20, 2004.

Application for Transfer Denied
Oct. 26, 2004.

Robert W. Stillings, Springfield, MO, for appellants.

David R. Adair, John E. Price, Springfield, MO, for respondent.

JEFFREY W. BATES, Judge.

Christian Health Care of Springfield West Park, Inc. ("CHC") sued Carolyn Little, in her capacity as Guardian and Conservator of the Estate of Mabel Young ("Conservator"), and George Young ("George") to recover amounts due for nursing home services provided by CHC to Mabel Young ("Mabel").[1] After a bench trial, the court entered judgment in favor of CHC and against Conservator and George, who were held jointly and severally liable for damages, attorney fees and prejudgment interest totaling $15,026.67. Conservator and George (referred to collectively as "Appellants") appealed from the judgment.

Appellants' consolidated appeals present four points for our determination. One point challenges the admission of an exhibit into evidence; the other three attack, in various respects, the sufficiency of the evidence to support the trial court's judgment. While we conclude none of Appellants' points have merit, the judgment is in error insofar as it purports to authorize enforcement of the judgment against Con-

---

1. We will refer to George and Mabel Young individually by their first names. We do so for purposes of clarity and intend no disrespect.

servator by circuit court execution. Therefore, modification of the judgment in this single respect is required.

## I. Standard of Review

■ In this court-tried case, our review is governed by Rule 84.13(d).[2] We must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Ridgway v. TTnT Development Corp.*, 126 S.W.3d 807, 812 (Mo.App. 2004).[3]

■ With respect to issues of law, we independently evaluate the conclusions of law the trial court draws from its factual findings. *Don King Equipment Co. v. Double D Tractor Parts, Inc.*, 115 S.W.3d 363, 368–69 (Mo.App.2003). Furthermore, we are primarily concerned with the correctness of the trial court's result, not the route taken by the trial court to reach that result. *Business Men's Assur. Co. of America v. Graham*, 984 S.W.2d 501, 506 (Mo. banc 1999). Therefore, the judgment will be affirmed under any reasonable theory supported by the evidence, even if the reasons advanced by the trial court are wrong or insufficient. *Id.; Professional Laundry Management Systems, Inc. v. Aquatic Technologies, Inc.*, 109 S.W.3d 200, 203 (Mo.App.2003).

■ With respect to issues of fact, we review the evidence and all reasonable inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Arndt v. Beardsley*, 102 S.W.3d 572, 574 (Mo.App.2003). We defer to the trial court's determination of witness credibility and recognize that the court is free to accept or reject all, part, or none of the testimony presented. *Sanders v. Insurance Co. of North America*, 42 S.W.3d 1, 8 (Mo.App.2000). Our summary of the evidence, which is set forth below, has been prepared in accordance with these principles.

## II. Facts and Procedural History

In July 1999, Balanced Care Corporation operated three nursing home facilities. One such facility, known as Balanced Care West, was located at 3403 West Mount Vernon in Springfield, Missouri.

George and Mabel are husband and wife. On July 26, 1999, Mabel became a resident at Balanced Care West. On that date, .an admission agreement was executed. The agreement was between Balanced Care West, Mabel and George. In the agreement, Mabel was referred to as "Patient," and George was referred to as "Responsible Party." The third page of this agreement has four signature lines designated for the respective uses of the patient, responsible party, facility representative and a witness. The name of "Mabel 'June' Young" was printed in handwriting on the first line.[4] The name of George Young was signed on the second line. Laura K. Alepio, an admissions coordinator at the nursing home, signed her name as facility representative on the third line. The fourth line for the witness was left blank. The agreement stated that "both

---

**2.** All references to rules are to the Missouri Rules of Civil Procedure (2004).

**3.** *Murphy* interpreted the provisions of former Rule 73.01(c). The provisions of that rule were transferred, in essentially the same form, to Rule 84.13(d) effective January 1, 2000.

**4.** Mabel had a diagnosis of dementia when she was admitted to Balanced Care West. Her name was printed on the agreement by facility representative Laura Alepio.

the PATIENT and RESPONSIBLE PARTY are liable jointly and severally for all charges incurred." The agreement also obligated Mabel and George "[t]o pay all costs, expenses and reasonable attorney's fees, whether suit be brought, in the event these must be expended in the collection of any and all sums due and owing by the PATIENT and RESPONSIBLE PARTY to the facility."

After Mabel was admitted to Balanced Care West, she resided there 24 hours per day and was provided with a room, bedding, laundry service, meals, snacks, assistance with activities of daily living (e.g., dressing, bathing, grooming), recreational activities, medications and nursing services. Medicaid paid a portion of the charges for Mabel's care, and the remainder of the charges were paid privately by Mabel and George. In January 2000, CHC purchased Balanced Care Corporation and thereby came to own all of its nursing home facilities, including Balanced Care West where Mabel was a resident.

In 2002, Mabel's account with CHC fell into arrears. On February 19, 2002, Greene County Public Administrator Carolyn Little was appointed as Mabel's guardian and conservator by the probate division of the Circuit Court of Greene County, Missouri. On February 27, 2002, CHC filed a two count petition against Mabel and George in the associate division of the Circuit Court of Greene County, Missouri. Count I pled a breach of contract theory against Mabel for not complying with the terms of the agreement requiring her to pay her outstanding account balance of $9,514.00. Further, CHC alleged that the agreement had been assigned to it by Balanced Care. Count II pled a breach of guarantee theory against George for failing to pay the account balance himself as required by the terms of the agreement. In addition, each count sought to recover court costs, attorney fees, prejudgment and post judgment interest. A copy of the agreement was attached to the petition, which was verified by an authorized representative of CHC.

On May 24, 2002, CHC filed a motion to substitute parties. This motion was granted on September 20, 2002. On October 10, 2002, CHC filed a second amended petition with leave of court. The second amended petition, which named Conservator and George as defendants, was pled in three counts. Counts I and III realleged the aforementioned breach of contract and breach of guarantee theories of recovery. Count II asserted an alternative *quantum meruit* theory to recover the reasonable value of the goods and services provided to Mabel by CHC. The second amended petition was not verified, but a copy of the agreement was attached as an exhibit.

George and Conservator filed a joint answer to the second amended petition. In the answer, George admitted that he executed the agreement. Conservator denied, for lack of knowledge, whether Mabel "entered into" the agreement; however, Conservator did not specifically deny that Mabel executed the agreement or assert lack of mental capacity to contract as an affirmative defense. The only affirmative defenses asserted were the following: (1) Balanced Care West was not a legal entity authorized to do business in Missouri, so it could not have entered into a valid contract; and (2) the trial court lacked personal jurisdiction over the person of Mabel Young.

The trial took place on July 18, 2003. CHC's proof was presented through the testimony of Robin Epson, the administrator of the facility where Mabel resided. During Epson's testimony, CHC offered a copy of the admission agreement in evidence as Exhibit 1. Relying on the best evidence rule, Appellants objected to the

introduction of the exhibit because it was not the original document. The trial court asked CHC to lay some additional foundation prior to ruling on the admissibility of Exhibit 1. Epson testified the exhibit was an unaltered, accurate copy of the agreement. Although the original document should exist in CHC's financial file, Epson had not looked in the file to see whether the original agreement was still there. The trial court then overruled Appellants' renewed "best evidence" objection.

Epson testified that Mabel was still a resident at the CHC facility at 3403 West Mount Vernon as of the date of trial and owed $9,349 on her account. The trial court admitted Exhibits 2 and 3, which were Mabel's account histories from Balanced Care and CHC. These histories listed the various goods and services provided to Mabel, which Epson testified were reasonable and necessary for Mabel's care. Epson also testified that CHC had incurred $6,110 in attorney fees in prosecuting its collection suit to recover the amount due for Mabel's care. The court admitted a redacted billing statement from CHC's attorneys to support the request for attorney fees.

The final exhibit offered by CHC was its Exhibit 7, a copy of the purchase agreement between CHC and Balanced Care Corporation. This document apparently contained language assigning Balanced Care Corporation's admission agreements to CHC. CHC laid a foundation that: (1) Epson had personal knowledge of the sale; (2) Exhibit 7 was a true and accurate copy of the original document; and (3) she could identify the signature of CHC's president, Alan Kilgore, on the document. Appellants objected to the admission of Exhibit

7 because it was not properly authenticated and its admission would violate the best evidence rule. The trial court sustained the objection.

At the close of CHC's evidence, Appellants moved for a directed verdict because there was no proof that the Youngs' admission agreement had been assigned from Balanced Care to CHC. The trial court overruled the motion. After Appellants presented some documentary evidence, the court took the case under advisement in order to give the attorneys time to prepare and file proposed findings of fact and conclusions of law.[5]

On July 23, 2003, CHC's attorney filed a motion to reopen the evidence, which was sustained on July 29, 2003. On July 31, 2003, the court held a hearing attended by the parties' attorneys. CHC again offered Exhibit 7, the asset purchase agreement, into evidence. Appellants' counsel agreed not to raise best evidence or hearsay objections, but he reserved the right to challenge the legal effect of Exhibit 7. The court withheld a ruling on the admissibility of the exhibit pending further briefing by the attorneys.

On September 11, 2003, the trial court filed its findings of fact and conclusions of law. In this document, the court overruled Appellants' objection to Exhibit 7 and admitted the document in evidence. On September 24, 2003, the court filed its final judgment in the case. Judgment was entered in favor of CHC, on all three counts of the petition. The court determined that Conservator and George were jointly and severally liable for the following sums: (1) the sum of $9,349 for goods and services rendered to Mabel; (2) the sum of $4,366.99 for attorney fees; and (3)

---

5. Neither Conservator nor George attended trial or testified. The documentary evidence presented during defendants' case tended to prove that there was no legal entity named Balanced Care West and that Balanced Care Corporation was not authorized to do business in Missouri.

the sum of $1,219.68 for prejudgment interest. The court entered judgment against Conservator and George in the total amount of $15,025.67 and ordered that "execution issue immediately" to aid in the collection of the judgment. The appeals by Conservator and George from the judgment were consolidated in this Court.

## III. Discussion and Decision

### Point I

■ Appellants' first point relied on urges reversal of the judgment because CHC failed to prove that Mabel's admission agreement had been assigned to CHC. Appellants argue that the language contained in Exhibit 7, the asset purchase agreement, constituted an agreement to assign assets in the future. Therefore, this document did not result in the actual assignment of the admission agreement to CHC. We are unable to review this alleged error because we lack a sufficient record to address the merits of Appellants' argument.

Rule 81.12(a) requires the record on appeal to contain "all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." It is evident from reading Appellants' argument that it is necessary for us to have a copy of Exhibit 7 to decide the issue presented in their first point relied on. Therefore, it was Appellants' duty to furnish us with a copy of this exhibit. *See State ex rel. Div. of Family Services v. Brown*, 897 S.W.2d 154, 158 (Mo.App.1995).

We have reviewed the record on appeal and determined that no copy of Exhibit 7 is included in the legal file or transcript. Rule 81.16 authorizes the parties to "stipulate that all or any part of the original exhibits shall be omitted from the record on appeal and be separately filed in the appellate court." We find no such stipulation in the record on appeal. In any event, Rule 81.16 states that, "[i]f the case is taken under submission without oral argument, exhibits shall be filed with the clerk within five days after the case is taken under submission." This case was submitted without oral argument on April 6, 2004. Exhibit 7 has not been filed separately with this Court at any time since the case was taken under submission. An exhibit omitted from the record on appeal may be treated by an appellate court either as immaterial to the issues presented or as supporting the judgment of the trial court. *See* Rule 81.16; *Bridgeman v. Bridgeman*, 63 S.W.3d 686, 692 (Mo.App.2002); *Kelly v. Ellis*, 875 S.W.2d 612, 614 (Mo.App. 1994); *City of Lee's Summit v. Collins*, 615 S.W.2d 592, 595 (Mo.App.1981). Consequently, Appellants' first point is denied because Exhibit 7 was neither included in the record on appeal nor filed separately with this Court. *See Besancenez v. Rogers*, 100 S.W.3d 118, 134 (Mo.App.2003); *Bridgeman*, 63 S.W.3d at 692; *Brown*, 897 S.W.2d at 158.

### Point II

■ Appellants' second point charges the trial court with error in entering judgment against Conservator on Count I because Mabel was mentally incompetent and did not sign the admission agreement, thereby precluding an express contract from arising between Mabel and Balanced Care. This argument fails because Conservator did not plead either of these defenses or present them for determination in the court below.

First, Conservator waived the potential defenses of Mabel's lack of mental capacity and failure to sign the agreement by not properly pleading them. Even though this case was filed in the associate division of

the circuit court, Conservator was required to plead any affirmative defenses she wanted to assert against CHC's claim. *See* § 517.031.2 (requiring affirmative defenses in associate division civil actions to be filed in writing); Rule 41.01(d) (making the provisions of Rules 41 to 101 applicable to civil actions pending in the associate division except where otherwise provided by law); Rule 55.08 (requiring a party to plead all applicable affirmative defenses).[6]

It is well-settled law that the burden of proving lack of mental capacity to contract rests upon the party making that allegation. *See, e.g., McElroy v. Mathews,* 263 S.W.2d 1, 10 (Mo.1953). Mabel was not adjudicated to be so incapacitated that she needed a conservator to manage her financial and business affairs until February 19, 2002. Such a finding of incompetency operates prospectively only and is inadmissible to show prior mental disability. *See Masoner v. Bates County Nat. Bank,* 781 S.W.2d 235, 239 (Mo.App. 1989). There is a presumption of sanity preceding adjudication, and the burden of proving otherwise is upon the party who seeks to show want of mental capacity to contract. *Id.* Therefore, Conservator should have raised Mabel's lack of mental capacity to contract as an affirmative defense if she wanted to contest this issue. *See Estate of Dean,* 967 S.W.2d 219, 222 (Mo.App.1998). Conservator's failure to do so resulted in a waiver of this affirmative defense. *Vaughn v. Willard,* 37 S.W.3d 413, 416 (Mo.App.2001) (failure to plead an affirmative defense generally results in the waiver of that defense).

The same is true of Conservator's purported defense that Mabel failed to sign the admission agreement. As previously noted, civil actions pending in the associate circuit division are governed by Rules 41 through 101 except where otherwise provided by law. Rule 41.01(d). Therefore, the provisions of Rule 55.23 applied to this action. *See KMS, Inc. v. Wilson,* 857 S.W.2d 525, 529 (Mo.App. 1993). Rule 55.23 states that "[w]hen any claim or defense is founded upon a written instrument and the same shall be set up at length in the pleading or a copy attached thereto as an exhibit, the execution of such instrument shall be deemed confessed unless the party charged to have executed the same shall specifically deny the execution thereof." A copy of the admission agreement was attached to CHC's second amended petition. The agreement identified Mabel as one of the contracting parties and bore her name as one of the persons who executed the agreement. Conservator's answer failed to specifically deny that Mabel executed the agreement. Pursuant to Rule 55.23, Conservator is deemed to have confessed that Mabel did execute the agreement. *Messner v. American Union Ins. Co.,* 119 S.W.3d 642, 650 n. 5 (Mo.App.2003); *Stephens v. Brekke,* 977 S.W.2d 87, 92 (Mo.App.1998). Accordingly, Conservator waived her right to assert, as a defense to the express contract theory of recovery pled in Count I, that Mabel did not sign the agreement.

Second, it is axiomatic that we will not convict a trial court of error on an issue which was not put before it to decide. *In re Estate of Mounts,* 39 S.W.3d 499, 503 (Mo.App.2000). We have carefully examined the record and find no indication that Conservator actually presented either of these purported defenses to the trial court for its determination. In *City of Cuba v. Williams,* 17 S.W.3d 630 (Mo.App.2000), we addressed a similar situation and concluded that the defendant there was fore-

---

**6.** All references to statutes are to RSMo (2000).

closed from raising new defenses for the first time on appeal:

> From the record, it does not appear that Appellant raised any of the arguments before the trial court that she now is asserting on appeal. On appeal, a party is bound by the position she took in trial court, and we can only review the case upon those theories. "Good faith" for the release as provided in § 537.060, RSMo 1994, was not questioned in the answer or affidavit. Appellant is foreclosed from now raising a different theory from the theory considered and rejected by the trial court.

*Id.* at 632 (citations omitted). Conservator's new theories of defense that Mabel lacked the mental capacity to contract and never signed the admission agreement will not be considered because they are not preserved for appellate review. *See Barner v. The Missouri Gaming Co.*, 48 S.W.3d 46, 50 (Mo.App.2001); *Country Mut. Ins. Co. v. Matney*, 25 S.W.3d 651, 654 (Mo.App.2000). Appellants' second point is denied.

### Point III

In Appellants' third point, they argue that the trial court erred in overruling their objection to Exhibit 1, the admission agreement, based on the best evidence rule. Appellants contend that the foundation laid by CHC was insufficient to authorize admission of a copy of the agreement, rather than the original document.

 A trial court has broad discretion when ruling upon a complaint that proffered documentary evidence violates the best evidence rule, and the court's decision is subject to reversal only in cases of clear abuse. *Lewis v. Bucyrus–Erie, Inc.*, 622 S.W.2d 920, 925 (Mo. banc 1981). We will find an abuse of discretion only if the trial court's ruling offends the logic of the circumstances or was so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration. *Williams v. Daus*, 114 S.W.3d 351, 365–66 (Mo.App.2003).

 A concise statement of the best evidence rule can be found in *Interstate Distributing, Inc. v. Freeman*, 904 S.W.2d 481 (Mo.App.1995):

> The terms of a document must generally be proven by production of the original of that document. A copy reproduced by a photographic duplicating process is not admissible under the best evidence rule. Secondary evidence may, however, be admitted if the offering party demonstrates that the primary evidence is lost or destroyed, is outside the jurisdiction, is in the possession or control of an adversary, or is otherwise unavailable or inaccessible.

*Id.* at 484 (citations omitted). In *Interstate*, the trial court sustained a best evidence rule objection and excluded a photocopy of an account statement offered by the plaintiff. The court excluded the copy because the original account statement was at the plaintiff's home office in Fenton, Missouri, and the witness did not know the original document was required for trial. We affirmed the trial court's discretionary ruling to exclude the copy, even though the witness also testified that it was against his company's policy to remove the original documents from files. *Id.*

 Here, the trial court admitted Exhibit 1—a copy of the admission agreement—even though Epson testified that the original contract should be in CHC's financial file and she had not even looked for the original contract. Given the marked similarities between the facts of this case and *Interstate*, Epson's testimony does not appear to support the admission of secondary evidence because CHC did

not demonstrate that the original admission agreement was lost or destroyed, outside the jurisdiction, in Appellants' possession or control, or otherwise unavailable or inaccessible.

In this court-tried case, however, we are concerned with the correctness of the court's result, not the route taken by the trial court to reach that result. Therefore, the judgment will be affirmed under any tenable theory, even if the reasons advanced by the trial court are wrong or insufficient. *Greentree Properties, Inc. v. Kissee*, 92 S.W.3d 289, 293 (Mo.App.2002). Since this action was originally filed in the associate division of the circuit court, we find the admission of Exhibit 1 was authorized by § 517.132. This statute states:

> If any suit, setoff, counterclaim or cross claim is based upon a written instrument purporting to have been executed by the opposite party, and the same or a verified copy is filed with the court, such instrument shall be admitted in evidence at trial unless the opposing party by responsive pleadings or affidavit shall deny the execution of the instrument, prior to admission of the instrument in evidence.

A copy of the admission agreement was attached to CHC's initial petition, which was verified by an authorized CHC representative. The agreement purported to have been executed by Mabel and George because each of their names was handwritten on the signature page. These facts were sufficient to authorize the admission of the agreement pursuant to the statute unless execution of the agreement by Mabel and George was denied by responsive pleadings or affidavit prior to the admission of Exhibit 1 in evidence. That did not occur. George admitted that he executed the agreement in his answer. Neither Mabel nor Conservator ever specifically denied, by answer or affidavit, that Mabel

executed the agreement. Since the admission of a copy of an instrument in evidence is specifically authorized once the foundational requirements in the statute are met, the trial court properly overruled Appellants' objection based on the best evidence rule. Point III is denied.

### Point IV

In the fourth point relied on, Conservator challenges the entry of judgment against the conservatorship estate on Count II of its petition, which asserted a *quantum meruit* theory of recovery. Conservator claims CHC failed to prove: (1) the goods and services it furnished to Mabel were provided at her request or with her acquiescence; and (2) the reasonable value of these goods and services.

■ On Count I, the express contract theory of recovery, the trial court awarded CHC the sum of $9,349. On Count II, the *quantum meruit* theory of recovery, the court found that the reasonable value of the goods and services CHC provided to Mabel was the same: $9,349. There was no double recovery in the judgment because CHC was only awarded a total of $9,349 as damages, not including attorney fees and interest. In our disposition of Points I–III, *supra*, we have already denied Conservator's challenges to the trial court's judgment on the express contract claim. We are prohibited from reversing any judgment unless we find that error was committed against the appellant materially affecting the merits of the action. Rule 84.13(b). Even if the trial court did err in the respects alleged as to Count II—an issue we do not decide—the error is harmless because it could have no material effect on the judgment against Conservator. Accordingly, we deny Point IV as moot. *See Ken Cucchi Const., Inc. v. O'Keefe*, 973 S.W.2d 520, 529 n. 1 (Mo.App. 1998).

■ Although we have decided the four points presented by Appellants, one final matter must be addressed. We are required to consider *sua sponte* whether the trial court had jurisdiction to enter the judgment it did, even though the issue is not raised by either party. *In re Marriage of McIntosh,* 126 S.W.3d 407, 418 (Mo.App. 2004). Here, the trial court's judgment ordered that "execution issue immediately" to aid in the collection of the judgment. Insofar as this language authorized the judgment against the conservatorship estate to be enforced by execution issued from the circuit court, the trial court lacked subject matter jurisdiction to do so, and this portion of the judgment is void.

Section § 475.260 states, in pertinent part:

1. When there is a conservator of the estate, all actions between the protectee or the conservator and third persons in which it is sought to charge or benefit the estate of the protectee shall be prosecuted by or against the conservator of the estate as such. He shall represent the interests of the protectee in the action and all process shall be served on him.

. . . .

3. When there is a conservator of the estate, the property and rights of action of the protectee shall not be subject to garnishment or attachment, and execution shall not issue to obtain satisfaction of any judgment against the protectee or the conservator of his estate as such, but judgments against the estate of the protectee shall be enforced in the manner provided for the enforcement of judgments against the estates of decedents.

Conservator defended CHC's claim against Mabel as required by this statute, and judgment was entered against her as conservator of Mabel's estate. Therefore, execution issued from the circuit court may not be used to collect the judgment against the conservatorship estate. Instead, the judgment may only be enforced in the manner provided for enforcement of decedents' estates. Section § 473.370 authorizes a person having a claim against the estate to establish the claim by obtaining a judgment from a court of record and then filing a copy of the judgment in the probate division. Section § 475.210 also authorizes the filing of a copy of a judgment as a claim against the estate of a protectee. A claim must be timely filed in order to be payable from the assets of the protectee's estate. *See Stephens v. Brenton,* 920 S.W.2d 109, 111 (Mo.App.1996). If a claim is not time-barred, it is placed in the appropriate class pursuant to § 475.211. Payment of claims is governed by § 475.213.

The trial court's judgment would permit CHC to circumvent this statutory enforcement mechanism and directly collect its judgment from assets of Mabel's conservatorship estate by execution. The trial court lacked subject matter jurisdiction to authorize collection of CHC's judgment from the conservatorship estate in this fashion. In *Stephens v. Estate of Campbell,* 865 S.W.2d 411 (Mo.App.1993), Stephens obtained a judgment against Brenton in her capacity as the conservator of Campbell's estate. Stephens sought to enforce the judgment by execution, resulting in the circuit court issuing a pay-in order that required a bank to pay estate funds into court for distribution to Stephens. The conservator challenged the circuit court's jurisdiction to issue the pay-in order pursuant to Stephens' request for execution. The eastern district of this court held that the circuit court lacked subject matter jurisdiction to issue the pay-in order:

The Estate claims the pay-in order of the Circuit Court of the City of St. Louis is invalid because that court lacks proper jurisdiction. The plaintiffs concede that issue. Claims against the estate of a protectee are enforced in the same manner provided for the enforcement of judgments against the estates of decedents. § 475.260.3 RSMo 1986. Once competent jurisdiction is obtained by a probate court over an estate, it continues exclusively in that court as to all matters pertaining directly to the settlement of the estate until the final distribution and prior to such distribution no other court, not even a court of concurrent jurisdiction, can interfere with its actions. A circuit court may not intrude on a probate court's jurisdiction when adequate relief is available in the probate court. All claims against the estate of a protectee regardless of when they arose may be filed in the probate division of the circuit court. § 475.205 RSMo 1986. Plaintiffs may seek relief in the Probate Division of the Circuit Court of Crawford County and have failed to indicate any basis for ousting that Court of its proper jurisdiction. The Circuit Court of the City of St. Louis lacked jurisdiction to enter the pay-in order. That order is null and void and presents nothing for our review.

*Id.* at 412 (case citations omitted). We reach the same conclusion here. The trial court lacked subject matter jurisdiction to authorize CHC to execute on the judgment against Conservator. Therefore, this portion of the judgment is null and void. *Id.*

Rule 84.14 directs us to finally dispose of an appeal unless justice otherwise requires and, to that end, authorizes us to "give such judgment as the court ought to give." Therefore, we modify the portion of the trial court's judgment dealing with execution so that it states as follows: "all for which let execution issue immediately, but only against defendant George Young." The judgment, as modified, is affirmed in all other respects.

PARRISH, J., concurs.

RAHMEYER, P.J.-C.J., concurs.

## ON MOTION TO APPROVE ATTORNEY FEES ON APPEAL

PER CURIAM.

 After our opinion was handed down, respondent CHC filed a motion asking us to approve its request for an award of attorney fees on appeal and to remand the case to the trial court to determine the amount of said fees. Attorney fees may be awarded on appeal if they are based on a written agreement that is the subject of the issues presented in the appeal. *Bechtle v. Tandy Corp.,* 77 S.W.3d 689, 695–96 (Mo.App.2002); *Ashland Oil, Inc. v. Warmann,* 869 S.W.2d 910, 913 (Mo.App.1994). The admission agreement at issue here obligated Mabel and George "[t]o pay all costs, expenses and reasonable attorney's fees, whether suit be brought, in the event these must be expended in the collection of any and all sums due and owing by the PATIENT and RESPONSIBLE PARTY to the facility." Pursuant to this provision, CHC was awarded its attorney fees and costs incurred prior to this appeal. Therefore, we grant the motion and approve CHC's request for attorney fees on appeal. We remand the case with directions to the trial court to: (1) determine the amount of reasonable attorney fees and expenses CHC should be awarded for defending against this appeal; and (2) enter an amended judgment reflecting said modification. *See American Nat. Ins. Co. v.*

*Noble Communications Co., Inc.,* 936 S.W.2d 124, 134 (Mo.App.1996).